## The State *vs.* John Byrne.

Upon an information for burning a building with intent to defraud an insurance
company—it was held—

1. That it was not necessary to prove the legal existence of the company.
That if the company had a *de facto* organization, and was actually doing busi-
ness, and the accused believed the policy to have been legally issued, and
burned the building with the expectation that the money would be paid and
for the purpose of. obtaining it, it was sufficient.

2. That if it was necessary to prove the legal existence of the company, which
was a foreign one, a certificate of the insurance commissioner of this state
that the company had complied with the laws of the state and was authorized
to carry on business here, (the statute requiring the commissioner to issue such
certificate only on proof of the facts and on a deposit with him of a copy of.
the charter and a sworn statement of its officers,) and the testimony of the
agent of the company here that he had issued numerous policies for the com-
pany, were primâ facie evidence of such legal existence; the case not being
one in which the company was asserting its rights or in which its legal exist-
ence was directly in issue.

3. That the fact that the policy was made payable to a mortgagee of the build-
ing was not inconsistent with the allegation that the company insured the.
building to the accused.

4. That the intent to defraud the insurance company could be inferred from the
circumstances.

INFORMATION for burning a dwelling house with intent to
defraud an insurance company; brought to the Superior Court
for the county of New Haven, and tried to the court, (upon
the defendant's election so to be tried under the statute,)
upon the plea of not guilty, before *Park, C. J.*

The information charged as follows: "That on the 14th
day of June, 1877, at the town of New Haven, John Byrne
of said New Haven, with force and arms, wilfully and feloni-
ously did burn a certain building, to wit, a dwelling house
then situated in said town of New Haven, known as No. 126
Fillmore street, of which building said John Byrne was at
the time of the burning of the same as aforesaid the owner,
with intent thereby to defraud the Republic Fire Insurance
Company, a corporation duly organized and existing under
the laws of the state of New York, for the purpose of carry-
ing on a general insurance business throughout the United
States, and especially in the state of Connecticut, having its

principal office in the city of New York, and which said corporation had previously insured said building of said John Byrne to him the said John Byrne against loss by fire, to the amount of fourteen hundred dollars, by its written policy of insurance theretofore issued and delivered by it to said John Byrne, a more particular description whereof is to the attorney unknown, which said policy of insurance was at the time of the burning of said house in force as a valid policy of insurance. And so the said attorney says that on said 14th day of June, 1877, at New Haven aforesaid, said John Byrne, being then and there the owner of said building as aforesaid, the same wilfully and feloniously did burn, with intent to defraud said insurance company out of said fourteen hundred dollars insurance as aforesaid, against the peace, of evil example, and contrary to the statute in such case made and provided."

Upon the trial it appeared that on the 14th day of June, 1877, the defendant was the owner of the house in question; that the house, together with the lot on which it stood, was mortgaged by the defendant to the National Savings Bank of New Haven to secure a loan of $1,200; and that there was accrued interest to the amount of $52 due the bank. It also appeared that about two o'clock on the morning of that day the house was discovered to be on fire, and that it was partially consumed.

For the purpose of proving that the building was insured, the state offered in evidence what purported to be a policy of insurance for $1,400, issued by the Republic Insurance Company of New York, which was procured by the defendant and the premiums paid by him. The state further offered the testimony of one Frederick A. Chase, who testified that the firm of which he was a member caused the policy to be issued, and that he personally procured it to be done; that the insurance company had done business in this state since 1872, and that he had done a fair business for them, and had procured for them many policies during that time in this state. He also testified that at the time of the issuing of the policy the firm of which he was a member held a certificate given

them by John W. Stedman, Insurance Commissioner of this state, authorizing them as agents of the company to transact fire insurance business in this state for the current year, and produced such certificate in court, and the same was by the state introduced in evidence. The certificate stated that the insurance company had "complied with all the laws of this state so far as the same were applicable to fire and marine insurance companies incorporated by or organized under the laws of other states of the United States."

But the state did not prove and did not claim to have proved by direct evidence, that the company had an actual existence, and did not prove or claim to have proved, except by the testimony of said Chase and by the certificate, that it had so complied with the laws of this state as to enable it to issue policies or do business in this state. In regard to this part of the case the defendant claimed that the state was bound to prove the actual legal existence of the company in New York by direct evidence, and that it had complied with all the requirements of our laws relating to foreign insurance companies; but the court overruled this claim and ruled that the evidence was proper, and might be sufficient in the absence of other conflicting evidence to establish the fact beyond reasonable doubt that the company was duly incorporated, organized, existing, and legally authorized to do business in this state, and had complied with the requirements of the law of this state.

The defendant further claimed that there was a material variance between the information and the proof, in this, that the policy on the face of it was made payable to the bank, the mortgagee, to secure its loan to the defendant in case of loss, and that there was nothing in the policy to show that under any circumstances the loss was payable to the defendant so long as the mortgage interest continued. Upon these facts the defendant claimed that the proof did not sustain the allegation, but the court ruled that the proof did sustain the allegation, and that there was no material variance.

The defendant claimed that in order to prove the intent to defraud the insurance company the state must show that the

intent existed by other evidence than the mere act of burning by the defendant; but the state claimed that the proof of the burning of the house by the defendant, together with the following circumstances proved by the state, namely, that the house immediately prior to the fire was worth no more than the sum of $1,000, that the mortgagee was pressing the defendant for payment of the interest then due, that the building was insured for the sum of $1,400, and that the defendant was out of work, and had been for a long time, and had no money to pay the interest, and had offered the place for sale, was proper and sufficient evidence on the subject. The defendant claimed that the evidence was not sufficient, but the court held that the intent could be inferred from the above circumstances in connection with all the facts of the case bearing on the subject.

The court having found the defendant guilty, he moved for a new trial for error in the rulings of the court.

*W. C. Robinson* and *F. A. Robinson*, in support of the motion.

1. The allegations that the insurance company was duly organized under the laws of New York, and was authorized to do business in this state, are material allegations. *People v. Peabody*, 25 Wend., 472; *Jones v. The State*, 5 Sneed, 346. And they can only be proved by the production of the act of incorporation itself, or by the production of a sworn copy of such act. *Stone v. The State*, 1 Spencer, 401; *Jones v. The State*, 5 Sneed, 346; *Williams v. Sherman*, 7 Wend., 111; *U. S. Bank v. Stearns*, 15 id., 314. Our statutes provide that no insurance company organized under the laws of any other state shall transact business in this state until it has complied with the requirements of sec. 9, art. 1, part 7 of chap. 2, title 17 of the Revised Statutes. The state was therefore bound to prove affirmatively that this company had complied with all these requirements, for until this had been proved the court could not find that any contract of insurance existed between the defendant and the insurance company by which the latter could be bound. The statement of Mr.

Chase, and the certificate produced by him, which he testified he had received from the insurance commissioner, did not prove this. It could only be proved by the same kind of evidence that was required to prove the incorporation and organization in New York, to wit, by the production of the certified copy of the charter deposited with the insurance commissioner, together with the sworn statement of its officers prescribed by the statute. *Stone* v. *The State*, 1 Spencer, 401; *Jones* v. *The State*, 5 Sneed, 346. If the company had no legal existence and could make no valid contract here, it could not be defrauded, and the defendant is not guilty. *De Bow* v. *The People*, 1 Denio, 9; 2 Russell on Crimes, 568; *State* v. *Wilson*, 30 Conn., 500.

2. The proof must sustain the allegations. Any difference in substance between the statements in the information and the evidence as to the offence charged, will be fatal. 2 Russell on Crimes, 794; 1 Bishop Crim. Law, 886; *Pryor* v. *The Commonwealth*, 2 Dana, 298. The allegation that there was an insurance on the property of the defendant at the time of the burning was a necessary and substantive one, and must be proved as laid. 1 Greenl. Ev., § 65. The allegation was that the insurance company insured said building *to him*, and delivered the policy *to him*, but the proof was that the policy was payable to the mortgagee, and there was nothing in it to show that under any circumstances it was payable to Byrne, so long as the mortgage interest continued.

3. The intent to defraud the insurance company must be proved by other evidence than the mere fact of burning. This intent must be proved in addition to the more general intent, in order to make out the offence, and nothing will answer as a substitute for it. 1 Bishop Crim. Law, 427. Where a man is charged with burning a house in his own occupation with intent to defraud an insurance company, the intent cannot be inferred from the mere act itself. 2 Arch. Crim. Law, 724. The only evidence of such intent, besides the evidence of the mere burning, was, that the house, immediately prior to the fire, was worth no more than $1,000; that the mortgagee was pressing for the payment of the interest

then due; that the building was insured for $1,400; that the defendant was out of work, and had no money to pay the interest, and that he had offered the place for sale. This did not prove the intent charged; malice toward the mortgagee, or wish to commit suicide, might have prompted the act. The proof must be such as to exclude the probability of any other intent than the one charged.

*O. H. Platt,* State's Attorney, contra.

1. Respecting proof of the legal existence of the insurance company, which had insured the house of the accused, it was sufficient to prove that it was a corporation *de facto,* doing an actual insurance business in this state. *People* v. *Hughes,* 29 Cal., 257; *People* v. *Schwarz,* 32 id., 160; *McDonald* v. *The People,* 47 Ill., 533; *Commonwealth* v. *Goldstern,* 114 Mass., 272; *Dennis* v. *The People,* 1 Parker Crim. R., 469; *People* v. *Chadwick,* 2 id., 163; *Mackesey* v. *The People,* 6 id., 114; *Reed* v. *The State,* 15 Ohio, 217.

2. There was no variance. The policy was issued to the accused. That it was made payable in case of loss to the National Savings Bank, as its interest might appear, could not and did not change the fact that the insurance company had assured the accused, and him alone, against loss or damage on the house. The insurance was to the accused; the loss, if any, was primarily his; and the payment of the loss by the company would enure wholly to his benefit.

3. Intent in this case could be proved, like any other fact, by circumstantial evidence. *Shepherd* v. *The People,* 19 N. York, 537; *Commonwealth* v. *Hudson,* 97 Mass., 565.

CARPENTER, J. Our statute provides that "every person who shall commit arson, and every owner or tenant of any building who shall wilfully burn it, or anything therein, with intent to defraud another," &c., "shall be imprisoned in the state prison not less than seven, nor more than ten years." The prisoner was charged with a violation of this statute by burning his own dwelling house, "with intent thereby to defraud the Republic Fire Insurance Company, a corporation

duly organized and existing under the laws of the state of New York for the purpose of carrying on a general insurance business throughout the United States, and especially in the state of Connecticut." The cause was tried before the Chief Justice without a jury. On the trial the state offered in evidence a policy of insurance on the building issued by said company, and procured by the prisoner, who paid the premium thereon. The state further proved by one Frederick A. Chase that the firm of which he was a member caused the policy to be issued, and that the company had done business and issued many policies in this state since 1872. He also testified that at the time the policy was issued the firm of which he was a member held a certificate from the insurance commissioner of this state, authorizing them as agents of said company to transact fire insurance business in this state for the current year. The certificate was also offered in evidence, which states that the insurance company had "complied with all the laws of this state so far as the same are applicable to fire and marine insurance companies incorporated by or organized under the laws of other states of the United States." Compliance with the laws of this state was not otherwise proved, and there was no direct evidence of the actual existence of the insurance company. The defendant claimed that the state was bound to prove the actual legal existence of the company in New York by direct evidence, and that it had complied with all the requirements of our laws relating to foreign insurance companies. The court overruled this claim, and held that the evidence was proper evidence on the subject, and might be sufficient, in the absence of other conflicting evidence, to establish the fact that the company was duly incorporated and legally authorized to do business in this state. The prisoner excepted and now asks for a new trial.

His counsel now claims that the existence of the corporation could only be proved by an exemplified or sworn copy of the act of incorporation; and that a compliance by the company with the laws of this state could only be proved by producing the copy of the charter deposited with the insurance commissioner, together with the sworn statement of its officers prescribed by the statute.

If it be conceded that it was necessary for the state to prove that the company complied with the statute of this state, we think that the certificate of the commissioner was competent evidence, and sufficient *primâ facie* to establish the fact.

The statute expressly requires such a certificate and that it should state expressly the fact sought to be proved. It will not be presumed that the commissioner would certify to that fact unless it existed; on the contrary the presumption is that the certificate is true. It will be remembered that the contents of the charter and the sworn statement are not in this case the subjects of proof, but simply whether such document has been deposited as required by law. Any witness who knows that fact may testify to it, and his testimony is primary proof, and of as high order as the production of the documents themselves. This certificate is evidence of the authority of the agents to issue the policy, and presupposes that every step essential to its validity has been taken.

But we do not understand that such proof is essential. The offense is complete if he burns his building "with the intent to defraud another." That intent may exist irrespective of a compliance with this statute by the company issuing this policy. If he believes that the policy was legally issued, that it was valid, and would be paid, and burned the building with the expectation and belief that the money would be paid, and for the purpose of obtaining it, it is enough. The actual payment of the money, and the legality and validity of the policy, are not essential elements of the crime.

Moreover the policy may be valid and collectible without complying with the statute. The company issuing it would violate our laws, but it is difficult to see how such violation could be a defense to an action on the policy. They would not be permitted to take advantage of their own wrong.

Another branch of this objection relates to the existence of the Republic Fire Insurance Company.

It will be observed that the objection is not that the evidence is inadmissible. It will hardly be contended that it does not tend to prove the existence of the corporation for

some purpose. It will be further observed that this is not a proceeding to test the existence of the corporation and its right to exist; nor is it an action by the corporation in which its legal existence is denied. In such cases strict proof is required. In this case, while it is necessary to prove that such a corporation exists, a *de facto* existence is sufficient. It is not necessary to prove an existence *de jure*. Neither is it necessary to introduce all the evidence that can be obtained. If the evidence is sufficient to satisfy the trier, that is all that is required.

A careful analysis of the objection and the facts of the case will tend still further to show that this objection is not tenable. It is not essential to prove the contents of the charter of the corporation. If it be shown to the satisfaction of the court that there was a charter, that under it a company was organized, and that, as such, it was actually doing business, nothing more is required. Now proof of the charter alone is not enough. That does not prove an organization and the transaction of business. Further proof of those facts is still required. Proof of an organization, while it does not prove the transaction of business, does tend to prove a charter or authority to organize. But when it is shown that an organization is actually doing business as a corporation, and has done so for a series of years unmolested and unquestioned, it is evidence that such an organization has a rightful existence. Now in this case, in addition to this evidence we have the fact that the prisoner himself transacted business with this organization as a corporation. That of itself is *primâ facie* proof of the corporate existence in this case. *United States* v. *Amedy*, 11 Wheat., 392. We have also the further fact that the insurance commissioner has issued to certain persons claiming to be the agents of this corporation a certificate certifying that said corporation has "complied with all the laws of this state so far as the same are applicable to fire and marine insurance companies incorporated by or organized under the laws of other states of the United States," and thereupon said agents are authorized to transact fire insurance business in this state for the current year. By a

reference to the statute it will be seen that foreign insurance companies are required to deposit with the insurance commissioner a copy of the charter, and a sworn statement of its officers, before he can lawfully issue such a certificate. Such certificate therefore is sufficient proof *primâ facie* of an incidental fact of this nature; and taken in connection with the other proof alluded to, in the absence of any conflicting evidence, abundantly justified the court below in finding the fact proved without requiring a copy of the charter.

Besides, the statute does not require that another should be actually defrauded, nor does it require, when the person intended to be defrauded is a corporation, that the corporation should be in every respect legal. The offense is complete if there be an intent to defraud an actual corporation. Hence proof of a *de facto* corporation is sufficient. The familiar law applicable to forgeries and counterfeiting and to crimes committed upon officers, has some analogy to the case at bar. Strict proof that the officer was duly commissioned or that the bank or other corporation was a corporation *de jure* is not required.

The case of the *United States* v. *Amedy*, *supra*, is directly in point. In that case an act of Congress provided "that if any person shall, on the high seas, wilfully and corruptly cast away, &c., any ship or vessel, of which he is owner, &c., with intent or design to prejudice any person or persons that hath underwritten, or shall underwrite, any policy or policies of insurance thereon, &c., the person or persons offending therein, &c., shall suffer death." The charter of the company was duly proved by an exemplified copy. It was objected that it was not shown that the company was duly organized by the subscription to the stock and the payment of such subscription as required by the charter. The court held that that was not necessary. It was further objected that the policy ought to have been proved to be executed by the authority of the company in such manner as to be binding on them. The court held that the actual execution of the policy by the known officers of the company *de facto* was sufficient. The court below instructed the jury, " that it was not material

State *v.* Byrne.

whether the company was incorporated or not; and it was not material whether the policy was valid in law or·not; that the prisoner's guilt did not depend upon the legal obligation of the policy, but upon the question whether he had wilfully and corruptly cast away the vessel, as charged in the indictment, with intent to injure the actual underwriters." That charge was sustained by the court. Story, J., says: " The law punishes the act when done with an intent to prejudice; it does not require that there should be an actual prejudice. The prejudice intended is to be to a person who has underwritten, or who shall under-write, a policy thereon, which, for aught the prisoner knows, is valid; and does not prescribe that the policy should be valid, so that a recovery could be had thereon. It points to the intended prejudice of an under-writer *de facto.*"

There was no variance. The allegation that the company insured said building to the prisoner against loss by fire was fully sustained by the proof. The fact that the policy on its face was made·payable to the mortgagee was not inconsistent with the allegation.

The question relating to the intent was a question of fact. In behalf of the prisoner it is claimed that the intent cannot be inferred from the mere act of burning. This is doubtless so; but in this case there was other evidence, and from all the evidence in the case the court found the criminal intent, and that finding is conclusive.

A new trial is not advised.

In this opinion the other judges concurred; except PARK, C. J., who having tried the case in the court below, did not sit.