318 So.2d 870 (1975)
Ronald H. ALDRIDGE
v.
Frank JOHNSON et ux.
No. 48306.
Supreme Court of Mississippi.
September 29, 1975.
*871 Riddick & McCoy Jackson, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Donald V. Burch, John B. Clark, Jackson, Herring & Herring, Canton, for appellees.
Before GILLESPIE, SMITH and ROBERTSON, JJ.
ROBERTSON, Justice.
Appellant, Ronald H. Aldridge, appeals from a judgment for $7,000 rendered against him in the Circuit Court of the First Judicial District of Hinds County and in favor of Frank Johnson and his wife, Francis L. Johnson.
About 4 o'clock p.m. on March 24, 1973, appellant Aldridge was proceeding in a westerly direction on two-laned asphaltpaved State Highway 16 between Carthage and Canton. It had been raining quite hard and the wind had been gusting, but at 4 o'clock only a light rain was falling. Appellant had his headlights and windshield wipers on. As he approached the Farmhaven community in Madison County, he passed a highway sign on which there was printed "SLOW TO 45". On the same post was a highway sign indicating an intersection. To the west of the two highway signs, the highway was straight and level and had double yellow lines painted down the center. At the intersection of highway 16 and a county road going north and south, there was a country store with a rather large GULF sign on an iron post, and gas pumps in front of and to the east of the store proper.
Attached to the east side of the store was a mobile trailer home, in which appellees, Frank Johnson and his wife, lived. An asphalt apron extended from highway 16 to the entrance to the store and trailer home.
Aldridge testified that as he approached the intersection he was driving 55 to 60 miles an hour, that no cars were in front of him and that he was in his proper lane, but that for some unknown reason his car began to skid sideways on the wet asphalt and he lost control. His car ran off of the north side of the highway, the right side hit the iron post with the Gulf sign on it, and the rear end of the car swung around and hit the west side of the trailer. The rear end of the car protruded about 1 1/2 feet into the trailer. Mrs. Johnson, her married son, Clayton Johnson, and her granddaughter, Anna Marie Johnson, were inside the trailer.
Neither the automobile nor any part of the house trailer struck Mrs. Johnson, but the impact and sudden appearance of the car protruding into the trailer did scare and upset her. Appellant, who also was not hurt, inquired immediately of Mrs. Johnson if she or anybody else was hurt. Appellant testified that Mrs. Johnson assured him that she was not hurt but was merely nervous and scared.
Steve Wilkerson testified that as he was driving east on highway 16 and as he topped a slight incline just west of the intersection, he noticed Aldridge in his lane trying to pass two cars traveling west in front of him. Wilkerson stated that he saw Aldridge try to get back into his proper lane, but that Aldridge lost control of his car. Wilkerson further testified that he would estimate Aldridge's speed at 70 miles per hour and that, while it had been raining hard before, it was merely showering at the time of the accident.
The Court instructed the jury to find for the plaintiffs and assess their damages. A punitive damages instruction was also granted the plaintiffs as well as an instruction authorizing damages for "all pain and suffering, including both physical pain and mental or emotional pain and anguish, if any". The plaintiffs continued to live in their damaged trailer for three months and seven days after the accident. They explained that they needed to look after and *872 operate their grocery store next door to their trailer home.
Appellant's witness, William Hill, who was in the mobile home repair and moving business, examined the trailer two days after the accident, itemized the damages and testified that he could completely repair it in three weeks for $4,389.13. He stated that it would not be necessary to move it to his shop and that the trailer would be in better condition than it was at the time of the accident.
Appellees' witness, Ray Watkins, who owned and operated Mobile Home Repair Service in Carthage, Mississippi, testified that he examined the trailer about six weeks after the accident. He estimated that the trailer could be repaired for $4,750, but that he might have trouble getting certain repair materials and that he would want the trailer brought to his shop for the repairs. He also was of the opinion that it would not be in as good condition after he had repaired it as it was in at the time of the accident.
About July 1, 1973, appellees bought a new house trailer, larger than the damaged one, and had it located on their farm about a mile and a half from their store. Mr. Johnson testified about various expenses of hooking up utilities on the new trailer. He also testified that a mahogany table worth about $100 and a mahogany mirror worth about $100 were destroyed in the accident.
Mrs. Johnson testified that she suffered from nervousness, sleeplessness and was upset for some time after the accident.
There was no testimony of a sale of the damaged trailer nor of its salvage value.
Dr. Ralph Daniel, Jr., a specialist in internal medicine, who had been Mrs. Johnson's doctor since February 2, 1967, and had treated her for various and sundry ailments over the years, including tension headaches, high blood pressure, depression, urinary tract infection, enlargement of the thyroid gland and cystic mastitis in the breast, testified that there was no causal connection between her health condition and the accident of March 24, 1973. In fact, after the accident he did not see her until April 9, 1973, when he made an annual type physical examination. On cross-examination Dr. Daniel admitted that the accident might have contributed temporarily to her anxiety.
There were eleven assignments of error, most of which had to do with the granting of a punitive damages instruction for the appellees, a refusal to grant an instruction for the appellant that no punitive damages could be awarded, and the allowance of an instruction that appellees could recover for "all pain and suffering, including both physical pain and mental or emotional pain and anguish, if any", even though there was no physical impact.
We are of the opinion that a punitive damages instruction should not have been granted the appellees, and as a corollary that an instruction should have been granted the appellant that there could be no award of punitive damages.
In our opinion there was no willful, gross and wanton negligence in the case at bar. In Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So.2d 226 (1962), this Court outlined the tests that should be applied in determining whether punitive damages were allowable. In Fowler we said:
"The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing *873 ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. [Citations omitted]." 244 Miss. at 150-51, 141 So.2d at 233.
While this Court did abandon the "physical impact doctrine" in First National Bank v. Langley, 314 So.2d 324, (Miss. 1975), we did quote with approval in Langley the following from W. Prosser, Handbook of the Law of Torts § 54 (4th ed. 1971):
"It would seem that there must necessarily be, in lieu of impact, some requirement of satisfactory proof, and at least in the absence of knowledge of the plaintiff's unusual susceptibility, there should be no recovery for hypersensitive mental disturbance where a normal individual would not be affected under the circumstances. But in general, it seems clear that the courts which deny all remedy in such cases are fighting a rearguard action. (Footnotes omitted). Id. at 332-33." 314 So.2d at 331-32. (Emphasis added).
In the case at bar, Mrs. Johnson's family doctor testified that there was no causal connection between the accident and her nervous condition. There was no mental disturbance and even the testimony as to nervousness and anxiety was extremely vague, unsatisfactory and speculative.
Since the proof was definite and clear as to the cost of complete repairs to the home trailer and the damage to two items of furniture, these actual damages are clearly separable from any punitive damages and damages for mental pain and suffering as a result of the accident. These proved actual damages amounted to approximately $5,000; the judgment was for $7,000.
We feel that there should be a remittitur of $2,000. If appellees agree to this remittitur within 15 days after this judgment becomes final, then the judgment will be affirmed for $5,000. Otherwise, the judgment will be reversed and this cause remanded for a new trial on the issue of damages alone.
Affirmed on condition of remittitur.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.