I.
This appeal presents the question, whether a release agreement, executed by a secured *Page 787 
lender and delivered to his debtor acquitting the debtor of all obligations arising out of certain business loans to corporations in which the debtor has an interest, affects the rights and duties of the parties arising out of three unrelated personal secured loans with respect to which the release agreement is silent.
We hold that, where there is no language in the release agreement which could fairly be construed to render it a general release, the unmentioned personal secured transactions remained viable after execution of the release and may be enforced by the secured party according to their tenor.
Finding that there are presented in this record no genuine
issues of material fact, the case was proper for disposition via summary judgment. Rule 56, Miss.R. Civ.P. For the reasons that will presently appear, we affirm the judgment entered summarily by the Circuit Court in favor of the secured lender and against the debtor.
 II.
The material facts of this appeal are wholly uncontradicted.
On and prior to June 2, 1982, John Doyle Smith and another member of his family had outstanding secured loans with First Federal Savings Loan Association of Grenada, Mississippi, as follows:
(a) As security for a note dated June 22, 1981, in the principal sum of $9,000.00 plus interest at 12.75% per annum, First Federal held a $10,000.00 certificate of deposit (C/D) owned by the Smiths and dated May 7, 1980;
(b) As security for a note dated October 8, 1981, in the principal sum of $9,000.00 plus interest at 12.75% per annum, First Federal held a $10,000.00 certificate of deposit (C/D) owned by the Smiths and dated May 7, 1980;
(c) As security for a note dated November 20, 1981, in the principal sum of $12,508.00 plus interest at 12.75% per annum, First Federal held a $8,000.00 certificate of deposit (C/D) owned by the Smiths and dated May 12, 1980.
Unrelated to these personal secured transactions, John Doyle Smith and two corporations in which he held a controlling interest, Times Square Realty, Inc., and Times Square Management Corporation, had been engaged in a secured transaction with Grenada Bank and First Federal whereunder Smith and his corporations had borrowed heavily from the Bank and First Federal to finance a shopping center project in Grenada known as Times Square. Smith and his corporations fell substantially into arrears on their payment obligations under the shopping center loans and the Bank, as prime lender, instituted judicial foreclosure proceedings. In due course all parties negotiated a settlement of the foreclosure suits and on June 2, 1982, an agreement entitled "General Release" was executed by John Doyle Smith, First Federal and by other interested parties.
It is important to keep in mind that on June 2, 1982, the three secured personal loans between First Federal and the Smiths were outstanding. The release that day executed contained the following pertinent paragraph:
 3. FIRST FEDERAL SAVINGS AND LOAN OF GRENADA, its successors and assigns, hereby releases, remises and acquits . . . John Doyle Smith . . ., excepting one $4,000 certificate of deposit held by First Federal as security, from all claims, causes of action and liabilities of any kind arising from or connected in any way with that certain note dated October 27, 1981, in the principal amount of $54,050.00 by Times Square Realty, Inc., in favor of First Federal, and arising from or connected in any way with Grenada County Chancery Court actions Nos. 82-2-24 and 82-2-31, and that certain deed of trust securing the aforesaid note, . . . First Federal further agrees to release, remise and acquit the officers, directors, agents and employees of Times Square corporations and the Smiths from all claims, causes of action and liabilities arising out of the transactions set forth in Grenada County Chancery Court Cause Nos. 82-2-24 and 82-2-31. . . . *Page 788 
 [Emphasis Added]
Not only did Smith default on his business loans arising out of the Times Square shopping center project, none of the three personal loans was paid when due, as a result of which on December 1, 1982, First Federal appropriated and liquidated the three certificates of deposit held as collateral. As is apparent from the figures recited above, the C/Ds were sufficient to pay in full the June 22, 1981 and October 8, 1981 notes. A deficiency balance, however, was left on the November 20, 1981 note, about which more will be said later.
In the meanwhile, Smith determined to take the position that the June 2, 1982 release agreement not only released him from all his obligations arising out of the Times Square shopping center project but also covered the three secured personal loans described above. Accordingly, Smith demanded of First Federal that it return to him the three certificates of deposit. First Federal refused, taking the position that the release agreement discharged Smith only from his obligations arising out of the shopping center project.
 B.
On November 24, 1982, John Doyle Smith commenced this civil action by filing in the Circuit Court of Grenada County, Mississippi, his complaint naming First Federal Savings Loan Association of Grenada as defendant. In that complaint, Smith alleged the execution of a June 2, 1982 release agreement wherein Smith says First Federal released him from all claims and liabilities to First Federal, with the exception of one $4,000 certificate of deposit held by First Federal as security. A copy of the release agreement was attached to the complaint. Smith further alleged that, in spite of the release agreement, First Federal had refused Smith's demand that it return three certificates of deposit in the aggregate principal sum of $28,000, plus interest and had refused to cancel three outstanding secured personal notes said by Smith to have been covered by the release.
After some procedural maneuverings, on December 20, 1982, First Federal filed its answer and counterclaim, and on the same day First Federal filed a motion to dismiss, Rule 12(b)(6), Miss.R.Civ.P., or, in the alternative, for summary judgment, Rule 56, Miss.R.Civ.P. In its answer, First Federal admitted the release document which had been attached as an exhibit to the complaint. It took the position, however, that this document by its terms represented a release limited only to those obligations of Smith owing to First Federal arising out of or related to the Times Square shopping center project in Grenada and had no effect on any rights or duties of the parties arising out of the three personal secured loans or the three certificates of deposit totaling $28,000 in principal amount and held by First Federal as security.
In addition to its answer, First Federal simultaneously filed a counterclaim wherein it alleged that, in connection with the November 21, 1981 personal secured loan, Smith had executed and delivered a note to First Federal in the principal sum of $12,508.00 plus interest at 12.75% per annum. The counterclaim also alleged that an $8,000.00 certificate of deposit dated May 12, 1980, owned by Smith had been at that time pledged to First Federal as security; that First Federal had made demand for payment of the note when due; that Smith had failed and refused to respond, as a result of which, First Federal liquidated the certificate of deposit, applied the accrued balance and interest of $10,484.88 against the note leaving a balance due of $3,671.80 plus interest. The counterclaim sought judgment against Smith for this deficiency.
In support of its alternative motion for summary judgment, First Federal filed the affidavit of John A. Stevens, President and Treasurer of First Federal Savings Loan Association. That affidavit explains that the first two personal loans had been liquidated in full by application of the certificates of deposit held as security and thereafter explained that, with respect to the November 20, 1981 loan, there remained, after liquidation of the security and application of its proceeds to the debt, a deficiency *Page 789 
due and owing by John Doyle Smith to First Federal in the amount of $3,671.80, plus interest.
On January 24, 1983, Smith filed an answer to counterclaim which, in pertinent part, admitted the facts and figures alleged in the counterclaim but contended that First Federal had no rights in the certificate of deposit, specifically, no right to liquidate the C/D and apply it to the note. The basis of this legal position, as before, was Smith's construction of the June 2, 1982 release agreement.
On July 5, 1983, this matter was set for hearing in the Circuit Court on First Federal's alternative motions to dismiss or for summary judgment. That morning, Smith filed an affidavit which, in pertinent part, states as follows:
 That on June 2, 1982, plaintiff [John Doyle Smith] along with his wife, Elaine A. Smith, Times Square Realty, Inc. and Times Square Management Corporation executed a release, which is attached to the Complaint in the above styled and numbered cause. That said release did not contain any mention of the accounts which are the subject of this suit. That there was no discussion about these accounts of deposits in First Federal Savings Loan Association of Grenada, Mississippi at the time of the stipulated agreement in open court on May 25th, 1982 nor were there any discussions or references made concerning the funds on deposits by the Plaintiff, his wife or his mother. That the only discussions had at any time concerning accounts with First Federal Savings Loan Association were those accounts that were specifically enumerated in the release dated June 2d 1982. That the release was the only agreement agreed to by the Plaintiff herein and that the agreement of release speaks for itself.
Following the hearing the Circuit Court entered judgment summarily:
(a) dismissing Smith's complaint against First Federal with prejudice; and
(b) adjudging Smith liable to First Federal on the counterclaim in the amount of $3,951.30 with interest from date at 12.75% per annum.
Smith has timely perfected his appeal to this Court where the matter is now ripe for review.
 III.
The procedure whereby in a civil action final judgment may be entered summarily and without plenary trial on the merits has been a part of our law since January 1, 1982. Rule 56, Miss.R.Civ.P. Its contours and nuances are becoming familiar and established: Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983); Bourn v. Tomlinson Interests, Inc., 456 So.2d 747 (Miss. 1984); Biggers v. Fox, 456 So.2d 761 (Miss. 1984); Dethlefs v.Beau Maison Development Corporation, 458 So.2d 714 (Miss. 1984);Dennis v. Searle, 457 So.2d 941 (Miss. 1984).
These cases have served as vehicles whereby we have attempted to articulate what is required before a summary judgment should be granted, this generally in the course of opinions reversing summary judgments. This case provides the opportunity for further explication. Indeed, on its facts and this record, this is a sort of case for which our summary judgment procedure has been designed, for this is a case where on this record there are no genuine issues of material fact.
The question presented on Smith's appeals, both from the dismissal of his complaint and the granting of judgment against him on First Federal's counterclaim, boils down simply to this: does the release have the legal effect of releasing Smith from his obligations owing to First Federal under the three personal secured loans described above? Smith argues that he has been so released. First Federal, of course, argues to the contrary. The point for the moment is that this question is essentially a legal one, on its face appropriate for summary disposition under Rule 56. There is nothing in the pleadings or affidavits suggesting to the contrary. *Page 790 
 IV.
We will consider first the original complaint filed by Smith against First Federal. As indicated, all turns on the legal effect of the language employed in the release signed June 2, 1982. Under paragraph 3 of that release First Federal releases Smith (except for one $4,000.00 C/D not relevant here) from all liabilities of any kind "arising from or connected in any way with" three matters:
(1) A note dated October 27, 1981, executed by Times Square Realty, Inc. in the amount of $54,050.00;
(2) Grenada County Chancery Court Civil Action Nos. 82-2-24 and 82-2-31 (the judicial foreclosure proceedings);
(3) That certain deed of trust securing the aforesaid note covering Lot 42 of the John Smith Subdivision in Grenada County.
Without hesitation, we hold that the language of the release is clear and unambiguous on its face. It must be construed and enforced as written. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss. 1975); Graham v. Lachaussee, 258 So.2d 796, 798 (Miss. 1972); Harris v. American Motorist Insurance Co., 240 Miss. 262, 269, 126 So.2d 870, 873 (1961); Holifield v. Perkins,233 Miss. 876, 880, 103 So.2d 433, 434 (1958); Pearce v. Pierce,214 Miss. 344, 347-48, 58 So.2d 824, 825 (1952).
By its clear and unambiguous terms, the release discharges and acquits Smith of all liabilities to First Federal arising out of the three enumerated matters. A review of the record makes clear that these three matters were all involved in and connected with the financing of the Times Square shopping center operation. As established by First Federal's affidavit, the three personal secured loans at issue here have no connection with the matters referred to in the release except, of course, for the fact that the secured lender in each instance was First Federal and the debtor in each instance was John Doyle Smith. Smith does not question this fact.
Two related arguments are suggested in support of Smith's proposed construction of the release. First, the release itself is labeled "General Release." That label would certainly lead one to think that he was indeed about to encounter a general release. He would be mistaken, for there is no substantive term or provision in the release which fairly provides, expressly or impliedly, that Smith and the others are being released from anything other than claims related to the shopping center. The release is a limited release mislabeled "General Release."
Second, Smith points to his June 5, 1983 affidavit as creating an issue of fact sufficient to avoid summary judgment. That affidavit, recited above, merely emphasizes that on and prior to June 2, 1982, the parties never discussed the three personal secured loans and that the release does not mention them. Because the release is a limited one, that affidavit effectively nails shut Smith's coffin.
We may presume that both Smith and First Federal were fully aware of these three outstanding loans at the time the release was executed on June 2, 1982. Had they wished to make any provision with reference to those loans, they could easily have done so. Their having failed to do so, and there being no language in the release which is broad enough to acquit Smith of any obligations except those arising from or connected with the Times Square shopping center operation, the Circuit Court correctly held that the release did not affect the three personal secured loans.
Biggers v. Fox, and Dennis v. Searle, are distinguishable on their facts. In each of those cases the court was asked via summary judgment to construe documents we found quite ambiguous. We held in Biggers and Dennis that substantial ambiguities in contracts sued upon may not be resolved summarily, and in each of those cases we reversed summary judgments which had been entered by the trial court. For the reasons set forth above, the release sued on here is clear and unambiguous. Accordingly, the Circuit Court correctly entered summary judgment in favor of First *Page 791 
Federal and against Smith dismissing Smith's complaint with prejudice.
 V.
The summary judgment entered in favor of First Federal on its counterclaim for the $3,951.30 deficiency was also proper. The procedural setting is important.
On December 17, 1982, First Federal filed the Affidavit of John A. Stevens, Vice President and Treasurer of First Federal. The affidavit qualifies for consideration under Rule 56(e), Miss.R.Civ.P. In paragraph 8 of that affidavit, Stevens describes the November 20, 1981 personal secured loan. The affidavit continues, narrating a number of matters including Smith's default on the November 20, 1981 note. Paragraph 14 states that First Federal liquidated its collateral and applied it to the note. Paragraph 15 then explains the computation of the deficiency as follows:
 15. The calculations on the November 20, 1981 loans, Exhibit H, were as follows:
 Borrower John Doyle Smith CD# 307 (Exhibit I)
 Principal
 Amount of loan $12,508.00 Acc. #5300226-7 Accrued Interest 1,647.96 _________ Total Due $14,155.96 Face amount of CD $8,000.00 Accrued Interest 2,484.88 _________ Total setoff $10,484.88
 On this loan, after applying the pledged CD to the balance due, there was a deficit of $3,671.80 owed by John Doyle Smith to First Federal.
Additional interest, of course, continued to accrue, producing a balance due and owing on the date of summary judgment in the amount of $3,951.30.
Smith had more than six months within which to file a counter-affidavit denying or contraverting these facts or in some other way to demonstrate the existence of a genuine issue ofmaterial fact. He did not do so. Smith's affidavit of July 5, 1983 in no way contests any facts material here.
Beyond the Rule 56(e) affidavits, the court considering a motion for summary judgment may also consider admissions in the pleadings. On December 17, 1982, First Federal filed and served its answer and counterclaim. In that counterclaim First Federal alleged the details of the November 21, 1981 note and the outstanding balance owing thereon of $3,671.80 plus interest at 12.75% per annum. This allegation is contained basically in paragraph 11 of First Federal's counterclaim. It is essentially the same as what is found in the Stevens' affidavit.
Significantly, on January 24, 1983, Smith filed his answer to counterclaim which, in pertinent part, stated:
 In answer to paragraph 11 of Defendant's [First Federal's] Counter-Claim, Plaintiff [Smith] admits the allegations but would show unto the Court that in truth and in fact all actions and conduct commenced by Defendant after demand was made on Defendant to release certificates of deposit on August 30, 1982, and Plaintiff denies Defendant had rights in accordance with the pledge agreement, on December 1, 1982, to apply the accrued balance and interest of the pledged certificate of deposit in the amount of $10,484.88 against the principal and accrued interest of the note in the amount of $14,155.96, leaving a balance due of $3,671.80. [Emphasis Supplied]
Though employing somewhat awkward wording, Smith has, by this pleading, admitted the basic facts alleged by First Federal in its counterclaim. Smith denies that First Federal had any legal right to apply the pledged C/D against the principal on the note. That legal position, of course, is founded on the thesis we have previously rejected, to-wit: that by virtue of the release of June 2, 1982, First Federal had released Smith of all obligations on the three personal secured loans. Otherwise, Smith hasadmitted the facts which are material to the motion for summaryjudgment based on the counterclaim.
In his brief, Smith complains bitterly that the summary judgment was granted without requiring that First Federal go forward *Page 792 
and offer any proof or testimony in support of the counterclaim. He misunderstands Rule 56. The material facts were admitted by him, subject only to the already disposed of legal defense. The facts thus become established for purposes of the pending motion. Beyond that, the Affidavit of John A. Stevens sets out the material facts, and those facts have in no way been contraverted by Smith.
Rule 56 mandates that a party opposing a motion for summary judgment be diligent. Brown v. Credit Center, Inc.,444 So.2d 358, 364 (Miss. 1983). The party opposing the motion, if he wishes to avoid summary entry of an adverse judgment, must bring forward significant probative evidence demonstrating the existence of a triable issue of fact. Union Planters NationalLeasing, Inc. v. Woods, 687 F.2d 117, 119 (5th Cir. 1982).
Here, however, we have the uncontradicted Stevens' affidavit which is wholly sufficient to establish the material facts favorably to First Federal. Moreover, Smith has admitted the basic facts and figures of First Federal's deficiency claim. To have avoided summary judgment on this issue, Smith would at the very least have had to (a) deny in his pleadings the facts and figures of the deficiency claim, and (b) support that denial with a specific affidavit conforming to the strictures of Rule 56(e).Brown v. Credit Center, Inc., 444 So.2d at 364. Since he did not do these things, and since the only defense he asserted fails as a matter of law, summary judgment was properly entered on the counterclaim in favor of First Federal and against Smith in the amount of the deficiency.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, PRATHER and SULLIVAN, JJ., concur.
WALKER, P.J., and BOWLING and DAN M. LEE, JJ., take no part.