George JONES, Plaintiff,

v.

BENEFIT TRUST LIFE INSURANCE
COMPANY, Defendant.

Civ. A. No. S83–0606(R).

United States District Court,
S.D. Mississippi, S.D.

Oct. 1, 1985.

See also 605 F.Supp. 179.

Wynn E. Clark, Pascagoula, Miss., for plaintiff.

John M. Kindard, Pascagoula, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

After full trial on the merits of this cause, the jury returned a verdict for the plaintiff and assessed actual damages in the amount of $50,000.00 and punitive damages in the amount of $40,000.00. Both parties have filed post-trial motions with accompanying memorandum briefs. The defendant has filed three motions; motion for judgment notwithstanding the verdict for new trial; motion to alter or amend judgment; and motion for a remittitur. The plaintiff has responded to the defendant's motions and has filed a motion to amend the prayer for relief in the complaint.

The Court, as always in post-trial motions of this type, is constrained to the *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc), standard of review. As a guide to both the district courts and Court of Appeals of this Circuit, the Fifth Circuit in *Boeing* set forth the standard to be employed in connection with motions for directed verdict and for judgment *non obstante verdicto*. In *Maxey v. Freightliner Corp.*, 665 F.2d 1367 (5th Cir.1982), the court reiterated this long-standing rule and stated:

> Under the standard established in *Boeing*, a motion for directed verdict or for judgment n.o.v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence—not just that evidence which supports the nonmovant's case—but in the light and with all reasonable infer-

ences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. A motion for directed verdict or judgment n.o.v. should not be decided by which side has the better of the case, nor should the motion be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of fact, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.

*Id.* at 1371, *citing Boeing*, 411 F.2d at 374–75. With this standard in mind the Court will begin its discussion with the defendant's motions.

The defendant's first request is that the Court reconsider the contractual determination made at the summary judgment stage of these proceedings. At that time the Court determined that the insurance contract provision in question provided for a reduction in the monthly benefits by amounts paid or payable to the insured only and not for an additional reduction by those amounts paid or payable to the insured's family. The defendant contends that the testimony at trial of the plaintiff's expert in social security matters indicated that the entire amount of benefits paid *could have* been paid solely to the insured. However, the insurance company's contract clearly provides for benefits paid or payable to the insured, not for benefits which could have been paid or payable to the insured.[1] The insurance company drafted

---

**1.** The pertinent contract provision of the master policy is the "Nonduplication of Benefits" provision which reads as follows:

The monthly benefits otherwise provided under this contract for any calendar month shall be reduced by any amount *paid or payable to*

*the Insured* upon making proper claim therefor during the same calendar month from the following sources: (1) Full Social Security benefits provided under the Federal Social Security Act together with amendments thereto. * * * (emphasis added)

the contract and stipulated to its unambiguity. *See* Defendant's Memorandum Brief in Opposition to Plaintiff's Motion for Summary Judgment, p. 3. ("Your Defendant ... asserts that the same policy language is unambiguous in showing that all social security benefits, whether paid to the insured or his dependents, should reduce benefits otherwise owing under the policy.") In addition, the submitted affidavit of Dean Stitt, Second Vice-President of Benefit Trust Life Insurance Company states as follows: "I do not consider the terms of the policy in question, especially that portion entitled 'Nonduplication of Benefits', to be ambiguous or misleading." Given its unambiguity, the Court's hands were tied and eyes blindfolded to any parol or extrinsic evidence which would add to, subtract from, vary or contradict the four corners of the contract. *See Foreman v. Continental Casualty Co.,* 770 F.2d 487 (5th Cir.1985); *Smith v. First Federal Savings & Loan Ass'n,* 460 So.2d 786, 790 (Miss.1984); *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 120 (5th Cir.1982); *Pfisterer v. Noble,* 320 So.2d 383, 384 (Miss.1975); *Freeman v. Continental Gin Co.,* 381 F.2d 459 (5th Cir.1967); *Valley Mills Div. of Merchants Co. v. Southeastern Hatcheries of Miss., Inc.,* 245 Miss. 71, 145 So.2d 698 (1962). Therefore, the Court will stand by its literal matter of law interpretation of the insurance policy.

The defendant's second point urges the Court to reconsider its position in letting the jury decide the "bad faith" issue instead of following the dictates of the Mississippi Supreme Court in *Blue Cross & Blue Shield of Miss., Inc. v. Campbell,* 466 So.2d 833 (Miss.1984). The *Campbell* decision expounded upon the guidelines set forth in *Standard Life Insurance Co. of Indiana v. Veal,* 354 So.2d 239 (Miss.1977) and *Reserve Life Insurance Co. v. McGee,* 444 So.2d 803 (Miss.1983) relating to the responsibility of the trial judge in determining whether there existed an arguably reasonable basis for denying a claim. The court specifically stated that:

> When the presentation of all evidence has been completed by both sides, it is the function and responsibility of the trial court to determine whether the insurance carrier had a reasonably arguable basis, either in fact or in law, to deny the claim. If he finds there was a reasonably arguable basis to deny the claim then the plaintiff is not entitled to have the jury consider any 'bad faith' award against the insurance company.

*Campbell,* 466 So.2d at 842.

This language seems to indicate that it is the function of the judge, and not the jury, to determine whether a reasonably arguable basis existed, either in fact or in law, to deny a claim. The question which is presented before this Court was whether the state court decision in *Campbell* should have been applied in this diversity case to divest the jury of its normal function to decide questions of fact. As a general rule, the distribution of functions between the judge and the jury is a matter determined by federal law. *Plantation Key Developers v. Colonial Mortgage,* 589 F.2d 164, 171 (5th Cir.1979). Whether the judge or jury decides an issue is one of federal law, with no *Erie* analysis problems. *FMC Finance Corp. v. Murphree,* 632 F.2d 413, 421 n. 5 (5th Cir.1980).

In *Byrd v. Blue Ridge Cooperative,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the United States Supreme Court recognized a "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts." *Byrd,* 356 U.S. at 538, 78 S.Ct. at 901. In *Byrd,* the Supreme Court answered the question of whether, in a diversity action, the court or a jury should decide whether the defendant was a statutory employer under South Carolina law. The South Carolina Supreme Court had previously held that the status of statutory employer was for the judge and not the jury to decide. It was argued that the federal court in South Carolina was bound under *Erie* to follow the state court's holding. Although a state may distribute the functions of its judicial machinery as it seems fit, the Supreme Court went on to state that "the federal system is an independent system for administering justice to litigants who proper-

ly invoke its jurisdiction. The essential characteristics of that system is the manner in which, in civil common law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury." *Byrd,* 356 U.S. at 537, 78 S.Ct. at 901. Therefore, despite the *Erie* doctrine and its command to follow state laws, it is the federal law which governs the allocation of issues raised between the judge and the jury. *Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir.1978); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2306 (1971).

The defendant's third contention urges the Court to reconsider its decision to allow the jury to consider in their deliberations the emotional distress of the plaintiff. The defendant asserts that the evidence of emotional distress was not competent, uncorroborated and speculative. The relevant facts are as follows.

The plaintiff in 1975 suffered a sickness which caused him to lose his eyesight. As a result of his blindness the plaintiff was totally disabled within the meaning of the group long-term disability policy he had with his employer, Mississippi Chemical Corporation. The plaintiff gave notice to the defendant of his claim and made demand for payment under the terms of the insurance contract. The plaintiff testified that when he received his disability check from the defendant he thought it was "a little low". The plaintiff stated that he checked with other employees of Mississippi Chemical who were receiving disability only to find out that he was receiving less than those other employees. He testified that he became angry, had nightmares and sought medical attention for high blood pressure at the Veterans Administration Hospital in Gulfport, Mississippi. He also testified that his wife had to take another job because of the defendant's conduct and that he was a happy blind man before this problem with his disability payments. The plaintiff's wife testified that the plaintiff had nightmares, could not sleep and was worried about his financial problems. She also testified that she took the plaintiff to the Veterans Administration Hospital and Hypertension Center to get the plaintiff's blood pressure down. The plaintiff did not call his doctor or any physician to testify in support of a claim for emotional distress damages.

The defendant asserts that the plaintiff's testimony concerning other problems unrelated to the defendant's conduct in reduction of his benefits could have caused emotional distress. The defendant alludes to the plaintiff's testimony concerning his sudden blindness, his inability to work and support his family, his loss of a son killed in the service, and loss of the roof of his house, all within the time period in controversy.

Under the *Boeing* standard, the Court is not at liberty to weigh factual controversies or determine the credibility of the witness. The Court may, however, determine whether as a matter of law the plaintiff has presented sufficient evidence under the substantive law of Mississippi to support a claim for emotional distress damages.[2] *Nunez, supra,* 572 F.2d 1119, 1125 (5th Cir.1978); *Midland Insurance Co. v. Markel Service, Inc.,* 548 F.2d 603, 606–7 (5th Cir.1977); *Dresco Mechanical Contractors, Inc. v. Todd-CEA, Inc.,* 531 F.2d 1292, 1296–97 (5th Cir.1976). Having reviewed the entire record and the applicable law, the Court is of the opinion that the defendant has a valid contention in this regard.

The tort of emotional distress is one which the law has been slow to accept. In fact, it is only in recent years that the courts have allowed the tort to serve as the basis of an action apart from any other tort. W. Prosser, Handbook of the Law of Torts, § 12 at 49 (4th ed. 1971). The reasons advanced for the slow evolution of the tort have been the difficulty of proof and measurement of damages. *Id.* at 50. The

---

**2.** The Court in this diversity case must look to the law of Mississippi for the appropriate substantive state law. *Erie Railroad Co. v. Tomp-* *kins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

tort of emotional distress as it relates to the so-called "bad faith" insurance case has evolved even slower. However, before delving directly into whether emotional distress damages are allowable in this case a general discussion of emotional distress is necessary.[3]

The Mississippi Supreme Court has in the course of its decisions distinguished the tort of emotional distress accompanied by physical injury from the tort of emotional distress unaccompanied by any physical injury. For example, in *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 903 (Miss. 1981), *Sears, Roebuck & Co. v. Young*, 384 So.2d 69 (Miss.1980), and *Aldridge v. Johnson*, 318 So.2d 870 (Miss.1975), the court has held where no physical injury accompanies the *negligent* conduct, damages for emotional distress may only be recovered if there is a resulting physical injury or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession. *Id.* In both *Sears* cases and in *Aldridge*, the plaintiffs were denied any recovery because of their failure to put forth sufficient proof of emotional distress. In *Sears, Roebuck & Co. v. Devers, supra*, the testimony indicated that the plaintiff was extremely nervous, had crying spells for several days following the incident but never took any medication and never consulted a physician. In *Sears, Roebuck & Co. v. Young, supra*, the plaintiff offered no satisfactory proof of any genuine physical injury. The plaintiff had consulted a doctor but did not remember mentioning the incident to him. In any case, the doctor was not called upon to testify. In *Aldridge v. Johnson, supra*, the family doctor testified that there was no causal connection between the accident and the plaintiff's condition. The Court held there was no mental disturbance and found the testimony as to nervousness and anxiety to be vague, unsatisfactory and speculative.

Those cases exemplify the standard for recovery for emotional distress without physical injury. A second line of case law illustrates the standard for recovery for emotional distress where no bodily injury accompanies the tortious conduct. In this second line of cases it appears the Mississippi Supreme Court has lowered the standards with regard to the sufficiency of proof of bodily harm to counterbalance the outrageousness of the conduct. *See Saenger Theatres Corp. v. Herndon*, 180 Miss. 791, 178 So. 86 (1938); *Lyons v. Zale Jewelry Co.*, 246 Miss. 139, 150 So.2d 154 (1963); *Daniels v. Adkins Protective Service, Inc.*, 247 So.2d 710 (Miss.1971). In each of the above cases the defendant's conduct was alleged to have exceeded the bounds of simple negligence. In *Saenger Theatres Corp. v. Herndon, supra*, the ticket taker at a movie theater verbally abused a 14-year old girl. The court stated:

> The court was, therefore, not in error in admitting evidence of mental pain and suffering, although unaccompanied by a distinct physical injury. Ordinarily, it is true, damages for mental pain and suffering not accompanied by a distinct physical injury are not allowable; but this rule does not include cases of wanton or shamefully gross wrong, such as the case now before us.

180 Miss. at 798–99, 178 So. at 87.

In *Lyons v. Zale Jewelry Co., supra*, an employee of Zale Jewelry used vile and abusive language and threats in a telephone conversation with the plaintiff in an attempt to enforce the payment of a debt which the plaintiff's son owed the defendant. The verbal abuse allegedly caused the plaintiff shock, nervousness and mental anguish. A demurrer to the plaintiff's declaration was sustained in the circuit court. The Mississippi Supreme Court reversed and remanded the case for trial. In their opinion the court stated in pertinent part as follows:

---

**3.** *See also,* Freeland, III and Freeland, IV, *Bad Faith Litigation: A Practical Analysis,* 53 Miss.   L.J. 237, 256–262 (1983).

In general, damages for mental anguish or suffering are recoverable when they are the natural or proximate result of an act committed maliciously, intentionally, or with such gross carelessness or recklessness as to show an utter indifference to the consequences when they must have been in the actor's mind. In most jurisdictions in fact, damages are recoverable for mental anguish and suffering caused by a willful, wanton, malicious, or intentional wrong, even though no bodily injury is sustained or other pecuniary damage alleged or proved.

246 Miss. at 149–50, 150 So.2d at 158.

In *Daniels v. Adkins Protective Service, Inc., supra,* the plaintiff brought suit against the defendant seeking damages for intense worry, grief and mental anguish caused by the alleged willful and wanton negligence of the defendant in embalming the body of the plaintiff's husband. At the close of the plaintiff's case, the defendant moved for a directed verdict asserting that the plaintiff had failed to prove willful and wanton negligence which the defendant contended was necessary in the absence of actual trauma. The trial court granted the defendant's motion and dismissed the plaintiff's case. The Mississippi Supreme Court affirmed the trial court's dismissal and stated:

The rule in this State is that there can be no recovery for mental pain and suffering from the mere negligent act of another unaccompanied by physical or bodily injury. However, damages are recoverable for mental pain and anguish by a willful, wanton, malicious or intentional wrong even though no bodily injury was sustained.

247 So.2d at 710. It should be noted that *Saenger Theaters Corp. v. Herndon, supra,* represents the only reported Mississippi case in which recovery for emotional distress without bodily injury was allowed.

Having discussed the rules in Mississippi for recovery from emotional distress without bodily injury, the Court is logically led to a discussion of emotional distress and its relationship to punitive damages. A cursory view of the standards for emotional distress without bodily injury and for punitive

damages shows that the standards are quite similar if not the same. For example, as pointed about in *Daniels v. Adkins Protective Service, Inc., supra,* the court stated that "damages are recoverable for mental pain and anguish by a willful, wanton, malicious or intentional wrong even though no bodily injury was sustained." *Id.* at 710. On the other hand, as to punitive damages the Mississippi Supreme Court in their most recent "bad faith" insurance decision stated that "[p]unitive damages may be recovered for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong." *Bankers Life and Casualty Co. v. Crenshaw,* No. 54,123 slip op. at 27 (Miss.S.Ct. Sept. 11, 1985) (en banc).

In his treatise on Contracts, Professor Murray has discussed emotional distress damages in a similar context.

While it is often suggested that such damages, when granted, are compensatory rather than punitive, the impression is often created that they are granted more for the purpose of discouraging the contract breaker through the use of a deterrent rather than attempting to evaluate mental distress on a pecuniary basis. In addition, it is difficult, if not impossible, to draw an incisive line between compensatory and punitive damages.

Murray on Contracts, § 232 at 472 (1974). However, as gleened from the treatises and the Mississippi bad faith insurance cases, emotional distress damages and punitive damages are separable for several reasons. Furthermore, the treatises and cases indicate that emotional distress damages are not allowable in this case.

Firstly, punitive damages are awarded in addition to actual damages, are in the nature of punishment for the wrongdoing of the defendant, and serve to deter others from similar conduct. *Crenshaw, supra,* slip op. at 26–27; *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239, 247 (Miss.1977); *Snowden v. Osborne,* 269 So.2d 858 (Miss.1972). Emotional distress damages are purely compensatory in na-

ture. If the Court were to allow emotional distress damages to stand where the proof of such damages is vague, speculative and uncorroborated by any medical testimony, there would in effect be a pyramiding of punitive damages.

The second point that needs to be raised involves the characterization of actual damages and rules for recovery of actual damages in the breach of contract action versus the tort action. In *Standard Life Insurance Co. v. Veal*, 354 So.2d 239 (Miss.1977), the court initiated the concept that an insurance company's refusal to pay a legitimate claim of its insured could constitute an independent tort. *Veal* thereby allowed recovery of punitive damages in a breach of contract action because the breach constituted a willful and independent wrong. *Veal, supra*, 354 So.2d at 247–48. By creating an independent tort action for failure to pay a legitimate claim under an insurance contract the Mississippi Supreme Court left open the question of whether foreseeable *tort* damages (versus contract damages), would be allowable should a bad faith refusal be established. Therefore, the Mississippi Supreme Court has not directly addressed the proof standards for recovery of emotional distress in a bad faith breach of contract case.[4]

The Restatement (Second) of Contracts sets out the following rule with respect to recovery for mental or emotional disturbance in a breach of contract case:

Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

The comment to the section explains the application of it:

Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure.

There are, however, two exceptional situations where such damages are recoverable. In the first, the disturbance accompanies a bodily injury. In such cases the action may nearly always be regarded as one in tort, although most jurisdictions do not require the plaintiff to specify the nature of the wrong on which his action is based and award damages without classifying the wrong. See Restatement, Second, Torts §§ 436, 905. In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. *Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.* (emphasis added).

Restatement (Second) of Contracts, § 353, pp. 149–50 (1981). While the Restatement view does not preclude recovery for emotional distress, it does limit the situations in which recovery may be had to those where the *severe emotional disturbance* was a *particularly likely result*. The proof in this case is insufficient on either ground. There was no proof to show that the insurance company's conduct was particularly likely to result in a severe emotional disturbance in the plaintiff and the plaintiff failed to show a severe emotional disturbance. *See* Restatement (Second) of Contracts, § 353 illustration 1.

However, *Veal* explains that the failure to pay a legitimate claim could constitute

---

4. The Mississippi Supreme Court has "pretermitted" the question of compensatory damages in a bad faith insurance case on at least three occasions. *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829 (Miss.1979); *Blue Cross & Blue Shield v. Campbell*, 466 So.2d 833 (Miss.1984); *State Farm Fire & Casualty Co. v. Simpson*, ‒‒ So.2d ‒‒, No. 54,606, slip op. (Miss. St. Ct. August 14, 1985).

an independent tort. Normally, breach of contract damages would include only those damages within the contemplation of the parties at the time the contract was made while tort damages include recovery for any reasonably foreseeable injury. *Compare Consolidated American Life Ins. Co. v. Covington*, 297 So.2d 894 (Miss.1974) with *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir.1980). *See also* Dobbs on Remedies, § 12.3 at 798 (1973).

The Restatement (Second) of Torts presents a standard which requires proof of extreme and outrageous conduct; conduct which would not normally be present in the typical bad faith insurance case. The Restatement (Second) of Torts in § 46(1) states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Comments (j) and (k) to § 46(1) are relevant to the discussion of the plaintiff's claim for emotional distress:

j. Severe emotional distress. The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. *Severe distress must be proved; but in many cases the · extreme and outrageous character of the defendant's conduct is in itself important evidence*

*that the distress has existed.* (emphasis added)

\*　\*　\*　\*　\*　\*

k. Bodily harm. Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm; and *if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm.* In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required. (emphasis added)

■ The plaintiff has failed to prove severe distress. In addition, in spite of a showing that punitive damages may have been warranted, the plaintiff failed to show extreme and outrageous conduct on the part of the defendant. Therefore, the Court finds that the plaintiff has failed to establish his emotional distress damages whether the Court accepts the Restatement (Second) of Contracts view or the Restatement (Second) of Torts view.

■ The third aspect which must be pointed out concerns the propriety of allowing punitive damages to stand while disallowing emotional distress damages. The case at bar is comparable in this regard to the Mississippi Supreme Court's decision in *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829 (Miss.1979). In *Wetherbee*, a bad faith insurance case, the court held there was insufficient evidence to support an award of actual damages in excess of the policy limits. The court found the compensatory damage jury instruction "permitted the jury to grant damages for fears, anxiety and emotional distress, not supported by competent evidence, ..." *Wetherbee, supra*, 368 So.2d at 836. The court reduced the compensatory damage award of $50,000.00 to the policy limits, $28,-

500.00, and upheld the punitive damage award of $50,000.00. As in *Wetherbee*, this Court is of the opinion that the damages for emotional distress are not supported by competent evidence. The Court, therefore, holds that the jury's award of $50,000.00 in actual damages be set aside. Since the Court's previous ruling on the contract subjected the defendant to contract damages of $7,300.00, with $4,705.00 as pre-judgment interest, the Court is satisfied that the plaintiff has established his actual damage predicate to a punitive damage award. The Court denies the defendant's alternative motion for new trial. Fed.R.Civ.P. 50(c)(1). *See also, Kendrick v. Illinois Central Gulf Railroad Co.*, 669 F.2d 341, 343 n. 3 (5th Cir.1982); *Tackett v. Kidder*, 616 F.2d 1050, 1053–54 (8th Cir.1980); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 110 (4th Cir.1974); 5A J. Moore & J. Lucas, Moores Federal Practice ¶ 50.14 (1981); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2533, p. 586 (1971).

■ Returning to the main body of the defendant's motion, it is the defendant's fourth concern that the jury verdict demonstrates that the jury was confused as to their duty. As stated earlier herein, the jury awarded actual damages in the amount of $50,000.00 and punitive damages in the amount of $40,000.00. The defendant's assertion in effect asks that the Court speculate on an issue that is not for the Court to decide. "A fundamental principle of American jurisprudence is that the factfinder determines the quantum of damages in civil cases." *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976); *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175 (5th Cir.1983). This Court's inquiry is limited to whether reasonable jurors could agree with the verdict. The record, with the only exception being the emotional distress damages, passes the test. *See Boeing v. Shipman*, 411 F.2d 365 (5th Cir.1969).

The defendant has also made several contentions concerning the Court's evidentiary rulings. The Court has reviewed each disputed ruling. The Court is of the opinion that there is substantial evidence in the record to support those rulings and further believes that those rulings are correct.

The defendant has also filed a motion to alter or amend judgment. The plaintiff's complaint sought compensatory damages in the amount of $50,000.00 with prejudgment interest thereon at the legal rate. Prior to trial, the defendant paid the plaintiff the sum of $7,300.00 as prejudgment interest on the $7,300.00, or a total of $12,005.00. The defendant thus contends that the jury verdict of actual damages in the sum of $50,000.00 exceeds the amount prayed for by the sum of $12,005.00. Since the Court has already set aside the jury verdict for actual damages, this motion to alter or amend judgment has been mooted.

■ The defendant's third motion is a motion for remittitur. The first part of the motion raises essentially the same issue as that raised in the defendant's motion for judgment n.o.v., i.e. that damages for emotional distress are not supported by the record and are not awardable in the case at bar. The Court has sufficiently discussed this issue. The second part of the motion urges the Court to grant a substantial remittitur as to punitive damages. The defendant asserts that the jury's verdict of $40,000.00 in punitive damages is "excessive, unreasonable and shows by its amount bias and prejudice ..." against the defendant. In this day and age of million dollar verdicts, the Court fails to see any excessiveness, unreasonableness, bias or prejudice. In fact, the Court is of the opinion that the jury reached a well-thought reasonable punitive damage verdict. The Court will not disturb the jury's punitive damage verdict.

Finally, the Court finds that the plaintiff's motion to amend the prayer of the complaint as to actual damages to conform to the verdict of the jury has also been mooted by the Court's finding that emotional distress damages do not lie in this case.

An Order in accordance with this Opinion shall be provided as set forth in the Local Rules.