BROWER *v.* STATE.

May 4, 1953

No. 38732 . 30 Adv. S. 1 64 So. 2d 576

*J. W. Kellum,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

Lee, J.

P. H. Brower was convicted, under an indictment based on Section 2010, Code 1942, of the wilful and felonious burning of Longview Church of God. He was sentenced to serve a term of one year in the state penitentiary, and from the judgment entered thereon, he appeals.

The church was situated about 100 yards from a public road. It burned between 12:00 and 1:30 A. M. on June 1, 1952. The weather was fair. The light wires had been disconnected, and no electric current could enter the building. No religious service had been held therein for the past six months. It had been cleaned, sprayed and the windows closed for about a month. A part of the land between the public road and the church was in cultivation. Just after sunup, following the fire, witnesses observed two sets of fresh human tracks crossing the plowed ground from the road toward the church and return. Those approaching the building were of ordinary stride, whereas the tracks leading from the church had a greater stride, indicating that the person was running away. One witness testified that these tracks were made during the night of the fire.

That morning Brower went to Parchman in his truck to obtain bloodhounds. On the way back to the scene he inquired of the keeper as to the proficiency of the dogs, and was told that they were good. Later, when

he again asked the same question and was given the same answer, he remarked that he had been to the church and the dogs might run him. When the hounds were put on these tracks, they looked at Brower and manifested no further interest in the trail.

Brower was not a member of the church and had no official connection with it. However, it was developed that, on December 31, 1951, without the knowledge or consent of the church or its officials, he went to Greenwood and procured an insurance agent to write two combination fire policies in the sum of $1,500.00 each on "Plainview Church of God." He paid the premiums and the policies were mailed to him. On Monday morning June 2nd, the day after the fire, he went to the office of the insurance agent and his greeting was, "Well, that church burned down last night." When the adjuster went to Brower's home the next day to investigate the loss, he found out that Brower had no connection with the church. Then, for the first time, the trustees learned about the insurance.

Thereafter Brower made a free and voluntary confession of the burning and gave in detail his plan and movements on the night of the fire, and the way and manner in which he had set it. He gave as his motive that on account of confusion in the church he thought it would be best to burn it down.

The assignments of error in effect raise three points, to-wit: (1) the indictment was insufficient on account of its failure to charge that the burning was done with malice; (2) the insurance was issued on Plainview, instead of Longview, Church of God, and was procured by Brower without any authority so to do, was invalid, and he, therefore, committed no crime; and (3) the State's evidence, aliunde the confession, was insufficient to establish the corpus delicti.

In response to appellant's point (1), attention is directed to Sections 2006-2009, Code 1942, which specifi-

cally deal with arson. In each instance, the burning, or attempt, must be done "wilfully and maliciously." These sections designate the offenses as arson in the first, second, third and fourth degrees, respectively. But Section 2010 thereof is as follows: "Any person who wilfully and with intent to injure or defraud the insurer sets fire to or burns or attempts so to do or who causes to be burned or who aids, counsels or procures the burning of any building, structure or personal property, of whatsoever class or character, whether the property of himself or of another, which shall at the time be insured by any person, company or corporation against loss or damage by fire, shall be guilty of a felony and upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than five years."

It is thus provided that the offender thereunder "shall be guilty of a felony" and there is no express designation of the offense as arson.

Omitting the formal parts, the indictment charged that Brower "did then and there wilfully, unlawfully and feloniously set fire to and burn the church building . . . of the Longview Church of God, the property . . . of W. H. Purnell, H. T. Purnell and Edgar Earp, as Trustees for the Congregation of said Church, the said P. H. Brower knowing then and there that said Church building was insured against damages and loss by fire under a contract of insurance issued by Louisville Fire & Marine Ins. Co. . . . a . . . corporation, with the intent then and there . . . to wilfully, unlawfully and feloniously injure and defraud the said Louisville Fire and Marine Insurance Company." ■■■ It is in the language of the statute, and was sufficient to charge the statutory offense. Hence the demurrer was properly overruled.

Replying to appellant's point (2) the record shows that, at the time of the application for the insurance, there was considerable conversation between Brower and the agent with reference to the location, size and construction of the church building. The clear purpose was

to insure this particular building. Shortly after the fire, Brower reported to the agent, ''Well, that church burned down last night,'' evidently referring to the one on which he had procured the insurance. If the policies had been valid in all other respects, obviously they were subject to reformation as to the name. He represented that he had authority to purchase the insurance, paid the premiums, obtained the policies, and evidently thought that the contract was enforceable.

 The test is not whether the policies were in fact enforceable, but whether he believed them so to be.

A good discussion of this question is found in 17 A. L. R. pages 1182-3, where it is said:

''The enforceability of the insurance contract is not an element of the offense. The guilt or innocence of the accused does not depend on the validity of the policy. People v. Hughes (1865) 29 Cal. 257; State v. Tucker (1884) 84 Mo. 23. It is sufficient if the accused believed that the policy was enforceable. State v. Byrne (1877) 45 Conn. 273; State v. Steinkraus (1912) 244 Mo. 152, 148 S. W. 877; Norville v. State (1921) ...... Tenn. ......, 230 S. W. 966; Parb v. State (1910) 143 Wis. 561, 128 N. W. 65; Smith v. State (1912) 149 Wis. 63, 134 N. W. 1123.''

The gist of the crime was the burning of the building with the intention of defrauding the insurance company. On this proposition it is there also said:

''The intention is a controlling element in the crime, and the legislature, under this branch of the statute, has said that if the burning is done or attempted to be done, with intent to defraud an insurance company, the crime is complete. Not that he or someone else must hold a legal and binding policy upon which the company would suffer loss if the property was consumed. Under the act, the crime is complete if fire is set to the property, with the intent of defrauding the company, although the accused may be mistaken as to the liability of the company, and as to the effect his act may produce upon the rights or interests of the company. The law looks to the

intention with which he acts, and not to whether he is well informed of the legal consequences that may attach to the company. It has not said the crime shall only be complete where the insurance company would be defrauded by the act, but it does say, if the act is performed with the intent to produce that result, the crime shall then be complete. It cannot matter, under this enactment, whether the company would be defrauded or not, if the act was committed with the intention of producing that result. It then follows that the crime may be complete although the policy held by the accused may be invalid, if he believed that it was legal and binding. The indictment does not contain, nor need it have contained, an averment that the accused held a valid policy, or any policy, but a simple averment that the act was done with the intent to defraud the company, and that is sustained by any testimony which proves the act was done with that intent. The policy was not introduced in evidence to prove that accused held a binding policy, but to show the intent with which the house was burned.'' McDonald v. People (1868) 47 Ill. 536.

Inability to recover on the policies would not operate as an effective defense for again it is there said:

''If the inability of the defendant to recover on the policy could be made an effective defense to a criminal prosecution, this would be available to every policyholder who burns up his property to secure the amount of the policy of insurance thereon. The fact of setting fire to the insured property of the policyholder invalidates all fire insurance policies, and would prevent a recovery in every case if this were the rule. The policyholder would then only have to prove the act which constitutes his guilt in order to escape punishment.'' People v. Morley (1908) 8 Cal. App. 375, 97 Pac. 84.

As to appellant's point (3), to prove the corpus delicti, ▮▮ it was necessary for the State to show that the church burned and that the burning was caused by a crim-

inal agency. Spears v. State, 92 Miss. 613, 46 So. 166; Whittaker v. State, 169 Miss. 517, 142 So. 474.

Actually the church burned. The clear night, the absence of electrical disturbances, the impossibility of origin from the light wires, the nonuse of the building—these facts make it very improbable that this was a case of spontaneous combustion. The nature of the tracks was circumstantial evidence that a human being walked up to the church at a leisurely gait, set the fire, and then hurried away. Besides, Brower seemed to have been the only person in the community who knew about the insurance, and who could have had an intent to defraud the insurance company. He reported the loss on the day after the fire with the evident purpose and expectation that the company would pay for it.

It is well settled that the evidence in proof of the corpus delicti does not have to be entirely independent and exclusive of the confession. It is sufficient when the corpus delicti is established by other evidence and the confession taken together. Sullivan v. State, 63 So. 2d 212 (Miss.); 20 Am. Jur. p. 1085, Evidence, par. 1233; Heard v. State, 59 Miss. 545; Patterson v. State, 127 Miss. 256, 90 So. 2; Garner v. State, 132 Miss. 815, 96 So. 743; Perkins v. State, 160 Miss. 720, 135 So. 357; Nichols v. State, 165 Miss. 114, 145 So. 903; Gross v. State, 191 Miss. 383, 2 So. 2d 818; Greenlee v. State, 188 Miss. 387, 195 So. 312; Phillips v. State, 196 Miss. 194, 16 So. 2d 630.

The evidence, aliunde the confession, was sufficient to show that a real crime had been committed; and this, together with the confession itself, was ample proof to sustain the verdict of the jury. Heard v. State, supra.

Affirmed.

*Roberds, P. J.,* and *Kyle, Ethridge and Lotterhos, JJ.,* concur.