**Jimmy Lee DAVIDSON and Sandra Davidson, Plaintiffs,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant.**

**No. EC85–28–LS–D.**

United States District Court, N.D. Mississippi, E.D.

Aug. 6, 1986.

504

Jerry Askew, Starkville, Miss., for plaintiffs.

Robert H. Faulks, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, Miss., for defendant.

## MEMORANDUM OPINION

SENTER, Chief Judge:

In this diversity action, plaintiffs, Jimmy Lee and Sandra Davidson, sue defendant, State Farm Fire and Casualty Company, for defendant's alleged wrongful refusal to pay homeowner's insurance benefits under a policy issued to the plaintiffs. Plaintiffs pursue recovery under the theories of tortious breach of contract, intentional infliction of emotional distress, and fraud in the inducement. On April 17, 1985, the court sustained defendant's partial summary judgment motion holding defendant not liable as a matter of law for any breach of fiduciary duties. Although noting both the requirements of Rule 9(e), Fed.R.Civ.P., and plaintiffs' lack of specificity in pleading the allegations of fraud in their original complaint, the court granted the plaintiffs twenty (20) days to file an amended complaint to cure these defects. An amended complaint was in fact filed on April 30, 1986. This cause is presently before the court on defendant's motion for partial summary judgment.

## I. THE BAD FAITH CLAIM

### A. *Factual Background*

Plaintiffs filed their initial complaint with the Clay County Circuit Court on December 27, 1984, but the complaint was removed to this court by the defendant on January 21, 1985, pursuant to the terms of 28 U.S.C. § 1441. As a result of defendant's alleged misconduct, plaintiffs seek an award of compensatory damages for either damage to or loss of the contents of their home and for emotional distress allegedly caused by the defendant's denial of their insurance claim. In addition, plaintiffs seek an award of punitive damages for the alleged "bad faith" actions of the defendant. The instant motion deals with this latter claim for punitive damages as well as the claim for extracontractual damages relating to plaintiffs' allegation of suffering emotional distress.

It is uncontested between the parties that the plaintiffs took out a homeowner's insurance policy from State Farm on June 2, 1984, which covered their home and its contents located on Waverly Road in Clay County, Mississippi, near the Town of West Point. The dwelling burned down on August 5, 1984. Subsequently, plaintiffs submitted their claim for proceeds under the policy to State Farm, but the claim was formally denied on December 7, 1984, following completion of an investigation into the cause of the fire and the extent of the loss.

### B. *Punitive and Extracontractual Damages* [1]—*A Review*

When an insurance company decides to deny a claim for payment under an insur-

---

**1.** The court treats the claim for extracontractual compensatory damages in the same manner as the claim for punitive damages since the plaintiff must show both an absence of arguable reason and malice or gross negligence or reckless disregard for his rights to prevail on both claims. *See, e.g., State Farm Fire and Casualty v. Simpson*, 477 So.2d 242, 253 (Miss.1985). Nevertheless, the court notes the distinct and different nature of each claim. The former is designed to compensate the insured for mental and emotional distress and actual economic losses, while the latter is designed traditionally to both punish the wrongdoer and to serve as an

example to others in similar situations. *Snowden v. Osborne*, 269 So.2d 858, 860 (Miss.1972).

For purposes of deciding the instant motion, the court assumes that Mississippi law allows recovery of such extracontractual compensatory damages, something which has yet to be directly decided by the Mississippi Supreme Court. As Justice Robertson noted in his concurring opinion in the *Blue Cross/Blue Shield* case, "We have no cases expressly authorizing recovery of such non-contract, actual damages although the proposition is implicitly recognized in *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829, 836

ance policy, the insured has the option of contesting this decision by filing suit in either state or federal court and alleging wrongful denial of the claim by the insurer. Proof must be presented to show an intentional refusal by the insurance company to pay with reasonable promptness the insured's claim and a right to the proceeds under the terms of the policy and the facts of the loss. If the insurer had a legitimate or arguable reason to deny the claim, the suit will remain one for wrongful denial, and the insured will be limited to recovering damages under the terms of the policy. If, however, the insurer had no arguable reason to deny the claim, then plaintiff's suit is referred to as "a bad faith refusal" on the part of the insurer, and a separate cause of action may exist. *See generally, Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 847 (Miss.1984) (Robertson, J. concurring). Since the vast majority of insurance cases involves an intentional refusal by an insurance company to pay an insured's claim, the presence or absence of arguable reason is the focus of a majority of the cases in this area.

■ Under Mississippi law, the element of legitimate and arguable reason is defined as follows:

An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person [or insurer] is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he [or it] acts.

*Id.,* at 851 (citations omitted). Since the issue of whether State Farm in the case *sub judice* had a legitimate or arguable reason for denying plaintiffs' claim is expressly not presented by the instant motion, the court will defer a detailed analysis of the question until formally requested to

render such a ruling, either under the procedures outlined by Rule 56, Fed.R.Civ.P., or at a trial on the merits. It should be noted, however, that the burden is on the plaintiff to show by a preponderance of the evidence that there was no legitimate or arguable basis for the insurance carrier to deny the claim. *Id., supra,* at 844.

In order to recover any damages above the policy limits, the insured must also show that the defendant has done to him "such a wrong as to impart insult, fraud, oppression or reckless disregard for [his] rights...." *Weems v. American Security Insurance Co.,* 486 So.2d 1222, 1227 (Miss. 1986). Stated another way, to prevail on a claim for either punitive or extracontractual compensatory damages, the plaintiff must show, in addition to the absence of any arguable reason, that the insurer acted with malice or reckless disregard for his rights. *Id.; Aetna Casualty and Surety Co. v. Day,* 487 So.2d 830 (Miss.1986).

While the presence of a legitimate or arguable reason on the part of the insurer for denying the insured's claim will defeat a claim for punitive damages, the absence of an arguable reason does not per se establish that the insurer acted with malice or gross negligence or reckless disregard for the plaintiff's rights, since denial of the claim could be the result of an honest mistake or oversight, which would amount to ordinary and simple negligence. *Weems, supra; Aetna Casualty, supra.* The plaintiff must still establish the egregious nature of the insurer's actions to be entitled to punitive or extracontractual damages. The central inquiry in a motion for summary judgment as to the claim for punitive or extracontractual damages is whether there is proof sufficient to raise an issue of material fact regarding the extreme nature of the insurance company's conduct or whether as a matter of law the

(Miss.1979), and *Bellefonte Insurance Co. v. Griffin,* 358 So.2d 387 (Miss.1978). *See Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 376 (5th Cir.1982)." *Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 847 (Miss.1984). This view has been confirmed in subsequent decisions of the court. *See, e.g.,*

*State Farm Fire and Cas. Co. v. Simpson,* 477 So.2d 242, 252–53 (Miss.1985); *Bankers Life and Cas. Co. v. Crenshaw,* 483 So.2d 254, 299 n. 18 (Miss.1985) (Robertson, J. dissenting); and *Aetna Casualty and Surety Co. v. Day,* 487 So.2d 830, 835 (Miss.1986).

insurer is entitled to judgment on the "bad faith refusal" claim.

One legitimate or arguable reason for denying an insured's claim is that the fire was deliberately set by the insured or his agent. Under Mississippi law, willful incendiarism by the owner is a defense to the liability of an insurer. *Sullivan v. American Motorist Ins. Co.*, 605 F.2d 169, 170 (5th Cir.1979); *Williams v. Cambridge Mutual Fire Ins. Co.*, 230 F.2d 293, 294 (5th Cir.1956); *Brower v. State*, 217 Miss. 425, 431–32, 64 So.2d 576, 579 (1953). This holds true even if, as here, the insurance policy does not specifically exclude coverage for willful burning, because its encouragement would violate public policy. *Sullivan, supra. See generally*, Couch on Insurance 2d, § 74.660 at 584.

■ Notwithstanding this general rule, it should be noted that an insured has the right to recover on his homeowner's policy if his home is destroyed by arson committed by another in an act of criminal vandalism.

■ An insurance company, to prevail on an arson defense, is required to establish by a preponderance of the evidence that the fire was incendiary, that the insured had a motive for burning his home, and that the insured or his agent had an opportunity to burn the dwelling. *See Vicksburg Furniture Manufacturer's, Ltd. v. Aetna Casualty Insurance Co.*, 625 F.2d 1167 (5th Cir.1980); *Sullivan, supra; Home Insurance Company of New York v. Rawls*, 151 Miss. 189, 117 So. 524 (1928). Where the insurance company knew at the time of the denial substantial facts demonstrating the foregoing elements of an arson defense, punitive damages are inappropriate and may be dismissed via the Rule 56 procedure. *See State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.

1985); *Mixon v. Prudent Life and Accident Ins. Co.*, 616 F.Supp. 139 (S.D.Miss. 1985), *affirmed* 783 F.2d 1061 (5th Cir. 1986); *Gorman v. Southeastern Fidelity Insurance Co.*, 775 F.2d 655 (5th Cir.1985).

In support of the instant motion, State Farm has submitted to the court a number of affidavits, depositions, and responses to requests for admission which tend to support a finding of reasonableness of its decision to deny plaintiffs' claim. This evidence, which is summarized *infra*, also tends to support a finding that the plaintiffs had both the motive and opportunity to set a fire which was incendiary in nature.

### C. *The Fire Scene Investigation*

On August 7, 15, and 18, 1984, an independent fire investigation team [2] visited the scene of the fire loss at the direction of State Farm for the purpose of determining the cause and origin of the fire.

The investigation revealed that the fire which burned plaintiffs' dwelling had three separate general areas of incendiary evidence leading to the conclusion that three fires had in fact occurred. These areas included the bedrooms, the den, and the kitchen. Furthermore, the team found flammable liquid burn patterns on the concrete slab in the bedrooms and in the den, and found numerous areas of spalling in the kitchen.[3]

The results of the investigation and the findings of the cause and origin experts were subsequently communicated to State Farm. Although the exact date of receipt is unknown, State Farm had received the report and considered it prior to formally denying plaintiffs' claim on December 7, 1984.

---

**2.** Donald F. Zwick, a fire scene analyst and technical investigator from Atlanta, Georgia, conducted the on-site examination of the dwelling. Zwick, an employee of Zwick and Associates, is a member of the International Association of Arson Investigators.

**3.** Spalling, or chipping, of a concrete slab is an indication of an abnormally hot substance having been burned on top of the surface. The floor fire is so intense as to cause the surface of the concrete to break off. *See, e.g., State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242, 244–45 (Miss.1985).

### D. *The Motive and Opportunity Investigation*

Following the investigation by the cause and origin investigators, State Farm also conducted its own separate investigation into possible motives which any individual(s) may have had for setting the dwelling on fire.

Ronnie Darby, a Field Claims Representative for State Farm, contacted Golden Triangle Realty and was advised by a realtor that the Davidsons had listed their house for sale from October 15, 1983, through January 24, 1984, without success. The realtor stated that the reasons for the listing were that the Davidsons were unhappy with the construction and physical condition of their home and they wanted to sell it. Darby also investigated the financial condition of the plaintiffs at this time and found out that two mortgages on the property in question, Depositors Federal in Jackson, Mississippi, and Collins Construction Company, had previously initiated proceedings against the Davidsons for failure to make monthly payments on schedule. Darby also learned that the Davidsons were indebted to the Dean Witter Reynolds investment firm in Columbus, Mississippi, the Mastercharge credit card company, H & R Block, Dreiyfus Jewelers, the J.C. Penney Department Store, and to an accountant, Fonda Wilborne. In a sworn statement made to State Farm prior to the denial of their proof of loss, plaintiffs admitted that they had financial difficulties and that they had discussed with their lawyer the possibility of filing for bankruptcy.

Darby's investigation also uncovered the fact that the plaintiffs had increased the amount of insurance coverage on their house a few days prior to the date of the fire loss.

Darby later contacted Sammie McNeel, the sheriff of Clay County, but found out that McNeel's investigation of the fire loss was limited in that he had made no determination as to the cause and origin of the fire or whether the fire was accidental or intentional and, subsequently, had issued no reports regarding the incident. Contact with Caradine Young, the chief of the West Point Fire Department, was equally fruitless, since Young also decided against investigating the fire loss and, instead, referred the matter to the sheriff's department. Although of the opinion that the delay between the start of the fire and the reporting of it to the department was suspicious, Young neither made a cause and origin determination nor directed anyone in the department to do so, and no report was issued. A review of the records of the office of the deputy fire marshal for the State of Mississippi reveals that no official reports have in fact been filed regarding the instant fire loss.

On September 4, 1984, the Davidsons were examined at length by State Farm under oath, during which time the details of the fire loss were discussed. While substantially corroborating the findings of State Farm's investigation, both plaintiffs separately denied either setting the fire in question or having any knowledge as to its cause or origin.

In response to an inquiry regarding the presence of flammable liquids in the dwelling, Jimmy Lee Davidson stated that he remembered keeping only gasoline in the carport for the lawnmower, lighter fluid on the porch for the grill, and three colored-oil or hurricane lamps in the den. Sandra Davidson confirmed this, but added that they had furniture polish in a cabinet in the bathroom, cans of paint or paint thinner "in every closet in the house," and sewing machine oil in the children's bedroom.

Prior to the fire, plaintiffs both stated that they had left town for an overnight weekend visit with relatives and had discovered that their house had burned only upon returning that Sunday night. Earlier, Sandra Davidson had been the last person to leave the house, on Saturday morning, and distinctly remembered having locked all the doors and windows to the house.[4]

---

**4.** In her examination, Sandra Davidson testified that she left the house a few minutes after her husband and took the children to join him at his sister's house. Jimmy Lee Davidson, however,

Although a landscaper, Johnny House, was left at the house working in the yard when Sandra Davidson departed, there is no evidence or testimony connecting him with the fire or establishing any additional relevant facts. According to the neighbors and law enforcement officials, the house burned down sometime early Sunday morning, and had been burning for quite some time before the fire department was called. Who called the fire department is unknown, and the neighbors have denied making the call.

Plaintiffs testified that they were the only ones to possess keys to the house [5] and that all doors and windows were locked regularly. Plaintiffs further testified that they had no enemies who would want to burn their house and that their home had never been burglarized. Plaintiffs admitted that they had no idea how the fire started.

Upon further questioning, the plaintiffs admitted leaving their children with the relatives they visited before returning Sunday night to West Point, but asserted that this was a common occurrence and unrelated to the fire. Plaintiffs denied removing any furniture from their home prior to the date of the fire loss.

Plaintiffs oppose the instant motion on the grounds that State Farm conducted its investigation negligently and ignored the fact that another individual, Eddie Collins, who was the second mortgagee on their dwelling, had both the motive and the opportunity to commit arson, if in fact the fire was arson.

In his deposition, Collins admitted that the plaintiffs owed him a substantial sum of money which they were refusing to pay on a regular basis. Collins also admitted that a judgment was enrolled against him in 1983 for an unpaid construction debt and that he owed both Building Services and the West Point Decorating Center during 1984, which debts remained unpaid at least through the time of the fire loss. Collins stated that he did not know that the plaintiffs were planning to leave town the weekend of the fire loss, but admitted that he knew the house had burned down as early as 2:00 a.m. on Sunday morning, as he had received a telephone call from his first cousin who had passed by the house on his way home. Upon further questioning, Collins was initially unable to recall what he was doing on Saturday night or where he was at that moment, but stated that he normally would have been at his home and, after relecting, asserted this to be correct. Collins also allegedly stated that his employees had access to the keys to the Davidson's house, although proof of this fact is not before the court.

State Farm rebuts plaintiffs' characterization of Eddie Collins as a burn suspect by noting three facts. First, Collins was paid by State Farm a total of approximately eight thousand dollars in exchange for the Davidsons' outstanding debt in excess of ten thousand dollars. Thus, Collins sustained a two thousand dollar loss as a result of the fire. Second, Collins was not listed as a mortgagee on the Davidsons' homeowner's policy, and he never sought to inform State Farm of his interest in the dwelling. Finally, State Farm noted that Collins was never questioned or charged by local law enforcement or fire officials in connection with the fire, and he was not considered a suspect in the commission of arson. Collins was interviewed by State Farm officials during their investigation and denied setting the fire or having any knowledge of or connection with the burning of the Davidson home.

### E. *Denial of Claim and Filing of Suit*

Based on the results of its investigation, State Farm rejected plaintiffs' proof of loss

---

testified that he had returned to pay the landscapers and was the last person to leave the house, subsequently joining his wife at his sister's house.

**5.** Although the plaintiffs stated in their motion that Collins "admitted in deposition that his other employees had access to the keys to [their]

residence," the relevant portions of Collins' deposition have not been submitted to the court for consideration. Even assuming, however, that such was the case, the court finds that this fails to materially alter the ultimate findings of fact and conclusions of law rendered herein.

and denied their claim for proceeds under the homeowner's policy in question.[6] State Farm asserted in its December 7, 1984, denial that it had reasonable belief that the plaintiffs either set the fire themselves or were responsible for the commission of the arson. Twenty days later, plaintiffs filed the instant action against State Farm for, *inter alia,* wrongful refusal to pay their claim.

State Farm has since conducted additional discovery into the factual background of the fire loss and has continued to maintain its original decision of denial.

### F. *Conclusions of Law—Bad Faith Claim*

■ As noted before, to prevail on the claim of a "bad faith" independent tort, the insured has the burden of establishing that the conduct of the insurer rose up to the level of gross negligence or was in reckless disregard for his right to recover under the policy. One way to do this is to show that the insurer had no arguable or legitimate reason to deny the insured's claim, discounting at the same time the possibility that ordinary or simple negligence caused the denial. *See Weems, supra.*

■ In the case at bar, all the evidence leads to the conclusion that State Farm had acted, and continues to act at all times, in a manner inconsistent with the characterization required for an assessment of punitive damages or a finding of "bad faith." The issue before the court is not whether State Farm's denial of the plaintiffs' claim was wrongful, but whether its conduct amounted to gross negligence so as to be in reckless disregard for the rights of the plaintiffs or whether it acted with malice toward the same. Plaintiffs' presentation of proof and a view of the record as a whole suggest that State Farm denied

plaintiffs' claim even when faced with another potential arson suspect, Eddie Collins. Having investigated both the plaintiffs and Collins, State Farm presumably considered the former to be the more likely suspects in connection with the arson and has since acted in accordance with this belief. While the belief may be factually incorrect, it is not an unreasonable one, and the court is of the opinion that it does not rise up to the level of conduct required by law to support a bad faith refusal claim.

The plaintiffs will be given the opportunity at trial to establish whether the denial of their claim was wrongful and whether they are entitled to contractual damages. But where, as here, there is no issue of material fact as to their entitlement to extracontractual or punitive damages, summary judgment is appropriate and shall be granted in favor of State Farm in this instance.[7]

## II. THE INTENTIONAL INFLICTION OF EMOTIONAL AND MENTAL DISTRESS CLAIM

Plaintiffs allege that they have suffered emotional and mental distress as a result of State Farm's denial of their proof of loss and claim for proceeds. Specifically, plaintiffs testify that they have become severely depressed, suffered severe headaches, have vomited, and have suffered from diarrhea. The only conduct from which they complain of is the actual denial of their claim. No medical attention has been sought for these symptoms, however, and the only proof before the court of their extreme nature is the affidavit submitted by each of the plaintiffs. Plaintiffs do not allege to have suffered any bodily injury as result of the denial of their claim.

The Mississippi Supreme Court has in the course of its decisions distinguished the tort of negligent infliction of emotional dis-

---

6. State Farm apparently did, however, reimburse the plaintiffs for their initial living expenses, at least in part, while its investigation was being conducted. The amount of this payment was $1,500.00.

7. An interesting case with a factual background similar to the case *sub judice* is *T.D.S., Inc. v.*

*Shelby Mut. Ins. Co.,* 760 F.2d 1520 (11th Cir. 1985), *modified in part and reh. denied,* 769 F.2d 1485 (11th Cir.1985), wherein both the majority and dissenting opinions discuss the important issues raised generally by arson/bad faith claims.

tress from that of intentional infliction of the same. The court has further stated that the presence or absence of a physical injury accompanying the infliction of mental suffering may control whether recovery is permitted under the law of the state.

If negligent conduct causes the infliction of emotional distress and no distinct physical injury accompanies the conduct, recovery will be denied unless the victim can show that the mental suffering was a reasonably foreseeable consequence and manifested itself with physical symptoms which were medically cognizable and which required medical treatment. *Jones v. Benefit Trust Life Ins. Co.*, 617 F.Supp. 1542 (S.D.Miss.1985); *Sears, Roebuck and Co. v. Devers*, 405 So.2d 898 (Miss.1981); *Sears, Roebuck and Co. v. Young*, 384 So.2d 69 (Miss.1980); *Aldridge v. Johnson*, 318 So.2d 870 (Miss.1975).

If intentional or grossly negligent conduct causes the infliction of emotional distress, although no physical injury has resulted, recovery will be permitted under Mississippi law. *Jones, supra; Saenger Theatres Corp. v. Herndon*, 180 Miss. 791, 178 So. 86 (1938); *Lyons v. Zale Jewelry Co.*, 246 Miss. 139, 150 So.2d 154 (1963); *Daniels v. Adkins Protective Service, Inc.*, 247 So.2d 710 (Miss.1971). This standard of proof is essentially the same as the one applicable to plaintiff insureds who seek to recover punitive damages in bad faith insurance cases. *Jones, supra.*

These rules were derived, however, in the context of traditional tort actions. In 1977, the Mississippi Supreme Court initiated the concept that an insurance company's refusal to pay a legitimate claim of its insured could constitute an independent tort. *Standard Life Insurance Co. v. Veal*, 354 So.2d 239 (Miss.1977). In *Standard Life*, the court allowed recovery of punitive damages in a breach of contract action because the breach constituted a willful and independent wrong. *Id.* at 247–48. In creating an independent tort action for failure to pay a legitimate claim under an insurance contract, the court declined to address the issue of whether extracontrac-

tual or tort damages would be allowable in the same situation. *See* footnote 1, *supra*, at 505. *See also Jones, supra*, at 1548.

In the case *sub judice*, plaintiffs allege that the defendant intentionally inflicted emotional distress upon them by denying their claim for proceeds under the policy. Assuming, *arguendo*, that a remedy is available to them under Mississippi law, it is clear that they must show at a minimum that the denial was (a) a wanton or shamefully wrong, or (b) outrageous conduct, or (c) an act done maliciously or intentionally, or (d) an act done with such gross negligence or recklessness as to show a callous indifference to the consequences. *Horton v. Hartford Life Insurance Co.*, 570 F.Supp. 1120 (N.D.Miss.1983); *Peel v. American Fidelity Assur. Co.*, 680 F.2d 374 (5th Cir.1982); *Jones v. Benefit Trust, supra.*

■ The court is of the opinion for the reasons previously stated that the plaintiffs have produced no evidence tending to raise the issue of whether State Farm's conduct was so egregious as to rise to the level required by the law. Accordingly, summary judgment shall be entered in favor of State Farm as to plaintiffs' claim for intentional infliction of mental and emotional distress.

### III. THE FRAUDULENT MISREPRESENTATION CLAIM

Plaintiffs allege that State Farm's agent, Ronald Darby, told them during the investigation of the loss to return the proof of loss forms back to him and "it would not take long before payment under the policy ..." was made. Plaintiffs further allege that Darby made this statement despite knowing it to be untrue.

Since State Farm subsequently denied their claim for proceeds, plaintiffs contend that this constituted a fraudulent misrepresentation of the truth.

In order to maintain an action for fraudulent misrepresentation, a plaintiff must show, *inter alia*, a right to rely on the alleged misrepresentation. *See, e.g., Mar-*

*tin v. Winfield,* 455 So.2d 762 (Miss.1984); *Franklin v. Lovitt Equipment Co., Inc.,* 420 So.2d 1370 (Miss.1982). Fraud, however, may not be predicated on a representation as to matters in the future, or upon a promise to do some act in the future, because the person to whom such statements were made has no right to rely on them. *See, e.g., House v. Holloway,* 258 So.2d 251 (Miss.1972).

■ Assuming *arguendo* that Darby made the statement as alleged by the plaintiffs, it would amount to nothing more than a mere promise to pay money at some future date and is inadequate as a matter of law to support an actionable claim for fraudulent misrepresentation. Summary judgment shall, therefore, be granted in favor of State Farm as to this claim.

## IV. THE BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING CLAIM

In their initial complaint, plaintiffs alleged that State Farm owed them a duty of good faith and fair dealing, which it breached by, *inter alia,* failing to make loss of contents payments to the plaintiffs when it knew they were entitled to the benefits under their homeowner's policy and failing to conduct the post-fire loss investigation in a reasonable manner.

As one commentator has noted,
> The chief problem with use of the term "bad faith" is that it implies a "duty to act in good faith." If a "duty to act in good faith" is equivalent to a duty not to breach intentionally, maliciously, or fraudulently, there *would* be such a duty. Under Mississippi law, however, the term "duty to act in good faith" is far broader, encompassing a much greater responsibility than that owed by ordinary contracting parties. Furthermore the term *does not apply to every contract.*

Freeland and Freeland, *supra,* at 238 n. 8 (citations omitted). While Mississippi does recognize that an insurer owes a duty of good faith and fair dealing to an insurer it is required to defend from liability, the

state supreme court has remained silent as to whether such a duty exists in the context of a homeowner's fire insurance policy claim.

### A. *Procedure for Construing Mississippi Law*

■ Mississippi law controls the disposition of this issue, and this court is bound to apply the law in the same manner as would a Mississippi court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In making an *Erie* -guess, this court must assume the rule of an inferior state court and attempt to reach the decision that a state court would reach under similar circumstances. *Dipascal v. New York Life Ins. Co.,* 749 F.2d 255, 260 (5th Cir.1985). In this regard, the Fifth Circuit has admonished that:

> As a federal court, "it is not for us to adopt innovative theories of [state law], but simply to apply that law as it currently exists," and to rule as we believe the state's highest tribunal would rule. We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best. If the law of Mississippi is to be changed, "[i]t is up to the Supreme Court of [Mississippi] and not this court to change the substantive law of that state." Finally, "under *Erie* we cannot skirt the clear import of state decisional law solely because the result is harsh."

*Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986), *cert. denied* — U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

■ When making an *Erie* -guess in the absence of specific guidance from the Mississippi Supreme Court, the prediction of state law takes into account several factors, including: (1) lower state court decisions and Supreme Court dicta, (2) the general rule on the issue, (3) the rule in other states looked to by Mississippi courts when they formulate the substantive law of Mississippi, and (4) other available legal sources, such as treatises and law review

commentaries. *Id. See generally Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); 1A (part 2) *Moore's Federal Practice* ¶ 0.309[2]; 8 Fed.Proc., L.Ed. §§ 20.375–381. As Professors Wright, Miller, and Cooper have noted,

> In vicariously creating state law ... the federal court may consider all available legal sources, including the Restatements of Law, treatises, law review commentaries, decisions from other jurisdictions whose doctrinal approach is substantially the same, and "the majority rule." *The federal court must keep in mind, however, that its function is not to choose the rule that it would adopt for itself; it must choose the rule that it believes the state's highest court ...is likely to adopt in the future.*

Wright, Miller and Cooper, *Federal Practice and Procedure*, § 4507, at 100–03 (emphasis added). This rule has been applied on a regular basis for the fifth Circuit in numerous cases. *Jackson, supra*, at 398.

### B. *The Duty Of Good Faith and Fair Dealing*

To date, Mississippi law places a duty of good faith and fair dealing on an insurance company only when it is in the position of a liability insurer and is obligated to defend an insured from suit. *See State Farm Mut. Auto Ins. Co. v. Commercial Union Ins. Co.*, 394 SO.2d 890, 894 (Miss.1981); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters*, 601 F.Supp. 286 (S.D. Miss.1984). No such duty has been recognized, however, in the first-party claim context.

Several courts from other jurisdictions have considered the present question and have held that no duty of good faith exists. *See, e.g., Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978); *Midwest Mutual Ins. Co. v. Brasecker*, 311 So.2d 817 (Fla.App.1975), *cert. denied*, 327 So.2d 31 (Fla.1976); *State Farm Gen. Life Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *Pendleton v. Aetna Life*, 320 F.Supp. 425 (E.D.La.1970); *Merrin Jewelry Co. v. St. Paul Fire and Marine Ins. Co.*, 301 F.Supp. 479 (S.D.N.Y.1969). The reason for the distinction between a first-party policy claim and a third-party liability claim was discussed by the Supreme Court of New Hampshire when it noted that:

> [t]he policies that warranted recognition of ... a duty [of good faith and fair dealing] to the insured in the [context of a] third party claim are inapplicable in the case of the first-party claim. "The dilemma presented by the absolute control of trial and settlement vested in the insurer by the insurance contract and the conflicting interests of the insurer and insured" in the third-party claim requires that the insurer recognize the conflict and give due regard to the interests of the insured. This dilemma is lacking in the first party claim. The insurer is not in a position to expose the insured to a judgment in excess of the policy limits through its unreasonable refusal to settle a case, nor is it in a position to otherwise injure the insured by virtue of exclusive control over the defense of the case. We therefore find no basis for extending the duty recognized in those cases to the first party claim.

392 A.2d 580–81.

Although some commentators have viewed insurance policies as "contracts of good faith" and fair dealing which must be "administered and performed as such by the insurer," at least in terms of rendering the policy unambiguous to the layman, 2A *Couch on Insurance* 2d § 23:11, others have urged rejection of implied covenants for a couple of reasons. First, the general nature of contract law has traditionally permitted a party "free to break his contract if he chooses" and pay liquidated damages, which would be contravened by the adoption of an implied covenant rule. Freeland and Freeland, *supra*, at 238, n. 9. *See also* O.W. Holmes, *The Common Law*, 301 (1881); Restatement of Contracts 2d, ch. 16, at 100 (1981). Second, where recovery is justifiable in terms of the insurer's conduct, a better approach may be to simply address this within the confines of the present "bad faith" basis for the tort, rath-

er than under a "good faith" standard of conduct. *Cf.* Denton and Walker, *Bad Faith Litigation in Mississippi*, § 16 (1981) (discussing breach of fiduciary duty). Finally, in the opinion of two commentators, the Mississippi Supreme Court "would probably reject application of a 'good faith' basis for the tort," since it had previously held that not every contract gives rise to a duty of good faith. Freeland and Freeland, *supra,* at 238 n. 12. *See generally Carter Equipment Co. v. John Deere Indus. Equip. Co.,* 681 F.2d 386, 390 (5th Cir. 1982).[8]

While the Mississippi Court has not ruled on the existence of a duty of good faith and fair dealing *per se,* it has declined to impose such a duty in related situations arising out of first party insurance contracts. For example, the court has declined to hold that a fiduciary relationship exists between insurer and insured in such a case. *Equitable Life Assurance Society v. Weil,* 103 Miss. 186, 60 So. 133 (1912). The court has also declined to hold that an agent of the insurance company owes an implied duty of good faith and fair dealing to the insured for acts taken while adjusting the claim. *Griffin v. Ware,* 457 So.2d 936 (Miss.1984).[9]

■ In sum, the overwhelming weight of authority indicates that Mississippi would not hold that a duty of good faith and fair dealing arises out of a first-party insurance contract. Accordingly, the court finds that plaintiffs' claim fails to state a claim upon which relief may be granted under Mississippi law, and it shall therefore be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P.

## V. THE BREACH OF PROMISE CLAIM

Plaintiffs allege that State Farm's agent, John Lester, promised prior to their signing the insurance policy that (1) State Farm offered the best insurance they could purchase and (2) if they ever had a loss, State Farm would pay. Plaintiffs contend that they relied on both these latter representations to their detriment and seek to recover damages as a result.

■ At the outset, the court notes that a statement to the effect that a product "is the best money can buy" is so general as to constitute mere "puffing," upon which a consumer has no right to rely in seeking performance of an obligation. *See, e.g., Gulf Oil Corp. v. Federal Trade Commission,* 150 F.2d 106, 109 (5th Cir. 1945). This rule codifies the universally accepted principle that an expression of opinion cannot be made the basis of an action for fraud or misrepresentation. *Ryan v. Glenn,* 344 F.Supp. 198 (N.D.Miss. 1972), *affirmed,* 489 F.2d 110 (5th Cir. 1974).

■ With respect to Lester's second "promise," the court finds that absent a

---

8. While a "fiduciary relationship" usually implies the existence of a duty of good faith and fair dealing, the converse is not always true. The authorities relied upon herein which discuss "good faith" in the context of fiduciary relationships are considered by analogy only with regard to whether an insurer owes such a duty toward the insured, this court having previously determined that no fiduciary duty arises out of such a relationship. *See Equitable Life Assurance Society v. Weil,* 103 Miss. 186, 60 So. 133, 134 (Miss.1912); *Mitchel v. Old Southern Life Insurance Co.,* No. WC82–121–WK (N.D. Miss. Feb. 7, 1984).

9. Although the Mississippi Supreme Court adopted the ruling of the California Supreme Court in *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), with reference to the duty of good

faith owed by an adjuster to an insured, the court by implication also held that: "... in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insurer himself." *Griffin, supra,* at 940, quoting *Gruenberg, supra.* Even assuming, however, that this signalled the adoption of a duty of good faith in Mississippi, the substantive law is the same as for "bad faith refusal," and proof of malice, gross negligence or reckless disregard for the rights of the insured must still be shown. *Id.* Since this court has already determined that summary judgment is appropriate on the bad faith issue, further discussion of the duty of good faith claim is unwarranted.

right to rely on a promise, no recovery may be had. As was the case with Darby's alleged representation, *supra* at 511, a mere promise to do some act or to pay money in the future is not enforceable. *House v. Holloway, supra.*

There remains the question, however, of whether this latter oral representation, "if you have a loss, State Farm will pay," may be considered by the court under the parol evidence rule and, if so, whether it became part of the final agreement between the parties.

■ The interpretation of an unclear, ambiguous contract generally involves questions of fact which preclude the granting of summary judgment. When the contract is unambiguous, however, the interpretation of the contract becomes a matter of law. *Strachan Shipping Co. v. Drenser Industries, Inc.*, 701 F.2d 483, 486 (5th Cir.1983). If the contract is unambiguous, the court is left to interpret the contract from the four corners of the instrument and the language appearing therein. *Smith v. First Federal Savings and Loan Ass'n*, 460 So.2d 786, 790 (Miss.1984); *Pfisterer v. Noble*, 320 So.2d 383 (Miss.1975).

The application of the parol evidence rule to plaintiffs' breach of promise claim mandates that the claim be dismissed. The parol evidence rules provides that "parol or extrinsic evidence is *not* admissible to add to, subtract from, vary or contradict ... written instruments which ... are contractual in nature and which are valid, complete, unambiguous and unaffected by accident or mistake." *Valley Mills, Div. of Merchants Co. v. Southeastern Hatcheries of Mississippi, Inc.*, 245 Miss. 71, 145 So.2d 698, 701–02 (1962); *Freeman v. Continental Gin Company*, 381 F.2d 459 (5th Cir. 1967). Mississippi recognizes three exceptions to the parol evidence rule: (1) extrinsic evidence will be admitted to show the intent of the parties if the contract is ambiguous or indefinite; (2) parol evidence of a *distinct*, valid, contemporaneous agreement between the parties, not reduced to writing is admissible if the evidence is not in conflict with the written agreement; and

(3) if the written agreement by its own terms refers to discussion between the parties, those discussions are generally admissible. *Valley Mills, supra. See also Jones v. Benefit Trust Life Ins. Co.*, 605 F.Supp. 179 (S.D.Miss.1985).

■ The insurance contract before the court is not ambiguous or indefinite. The contract contains no references to other discussions between the parties. The contract in fact amplifies upon Lester's statement by defining what losses are covered and when and how payment of proceeds will accordingly be made. Lester's statement is not an example of a distinct, valid, contemporaneous agreement, but merely a general promise that State Farm would pay for losses covered under the policy. The terms of the contract were not modified by this representation.

Plaintiffs have failed to rebut State Farm's contention that there is no issue of material fact as to their right of recovery on the breach of promise claim, and summary judgment shall be entered in favor of the defendant here as well.

An order shall be entered in conformity with this opinion.

## ORDER

Pursuant to a Memorandum Opinion entered this date, the court, upon due consideration of defendant State Farm's motion for partial summary judgment, finds that said motion is well taken and should be sustained.

It is, therefore, ORDERED:

(1) That summary judgment is hereby entered in favor of the defendant with respect to plaintiffs' claims for punitive, extracontractual, or "bad faith" damages, intentional infliction of emotion and mental distress damages, fraudulent misrepresentation damages, breach of the duty of good faith and fair dealing damages, and damages for the breach of a promise; and

(2) That the aforementioned claims be and are hereby dismissed with prejudice.

Plaintiffs' allegation of wrongful denial and their claim for contractual damages shall remain unaffected by this order.