**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff/Counterdefendant,**

v.

**Kenneth CUPSTID and Nancy E. Cupstid, Defendants/Counterplaintiffs.**

**Civ. A. No. J86–0385(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 21, 1987.

Suzanne N. Saunders, Jackson, Miss., H. Michael Bagley, Clayton H. Farnham (admitted pro hac vice) Atlanta, Ga., for plaintiff/counterdefendant.

Phillip M. Nelson, Kirk & Nelson, Ridgeland, Miss., for defendants/counterplaintiffs.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff/counterdefendant, American Manufacturers Mutual Insurance Company (Manufacturers Mutual), for partial summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The defendants/counterplaintiffs, Kenneth Cupstid and Nancy E. Cupstid, have timely responded to the motion and the court has considered the memoranda with attachments submitted by the parties.

This declaratory judgment action was initiated by Manufacturers Mutual seeking a declaration that it is not liable to defendants for proceeds under a certain policy of homeowner's insurance issued by plaintiff to the Cupstids. The effective dates of the policy in question, policy number UP 231 082, were January 17, 1986 through January 6, 1987. On March 8, 1986, the property covered by the policy was destroyed by fire. The Cupstids submitted to Manufacturers Mutual a claim for damages sustained, pursuant to the policy, which, following an investigation of the cause and origin of the fire, was denied on June 2, 1986. The investigation conducted by Manufacturers Mutual revealed that the fire was incendiary in origin, indicated that the Cupstids intentionally caused or procured the fire to be set, and further indicated that the Cupstids had made material misrepre-

sentations in both the application for insurance and the proof of loss statement on the contents. After its denial of the Cupstids' claim under the policy, Manufacturers Mutual initiated this action seeking to avoid all liability under the policy and to have the policy declared void. The Cupstids counterclaimed for recovery of proceeds under the policy and for bad faith refusal to pay damages based on their allegation that Manufacturers Mutual's denial of benefits deliberately, willfully and recklessly deprived them of payments rightfully due them under the policy. It is as to the Cupstids' claim for punitive damages that Manufacturers Mutual seeks partial summary judgment.

On a motion for summary judgment, the burden is on the moving party to establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. C. Wright, *The Law of Federal Courts*, § 99, at 668 (4th ed. 1983). If the moving party is able to make out a prima facie showing as to the absence of a genuine issue of material fact, the opposing party cannot rest on the allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. And, the party opposing summary judgment must produce significant evidence tending to support his position. In *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the United States Supreme Court noted that under the plain language of Rule 56(c), the entry of summary judgment is mandated against a party who, in response to a proper motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In order to establish a claim for punitive damages, the burden is on the Cupstids to show, by a preponderance of the evidence, both an absence of an arguable reason for Manufacturers Mutual's denial of the claim *and* malice or gross negligence or reckless disregard for their rights. *See State Farm Fire and Casualty v. Simpson*, 477 So.2d 242, 253 (Miss.1985);

*Aetna Casualty and Surety Company v. Day*, 487 So.2d 830 (Miss.1986).

In *Davidson v. State Farm Fire and Casualty Co.*, 641 F.Supp. 503 (N.D. Miss.1986), on facts substantially similar to those in the case *sub judice*, the court granted partial summary judgment in favor of the insurer on the issue of punitive damages. The court there recognized that the focus of the inquiry on a motion for summary judgment for punitive damages is "whether there is proof sufficient to raise an issue of material fact regarding the extreme nature of the insurance company's conduct or whether as a matter of law the insurer is entitled to judgment on the 'bad faith refusal' claim." *Davidson*, 641 F.Supp. at 506–07. An arguable reason for the denial of an insured's claim, such as will insulate the insurer from a subsequent claim for punitive damages, has been defined as "one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusion on the basis of which he acts." *Blue Cross and Blue Shield of Mississippi v. Campbell*, 466 So.2d 833, 851 (Miss.1984) (Robertson, J. concurring). One such arguable reason exists where the insurance company, at the time of its denial, knew of substantial facts supporting an arson defense. In such a case, "punitive damages are inappropriate and may be dismissed via the Rule 56 procedure." *Davidson*, 641 F.Supp. at 507 (citing *State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.1985)). Elements of a claimed defense of arson consist of evidence that the fire was incendiary, that the insured had a motive for burning his home, and that the insured or his agent had an opportunity to burn the dwelling. *Davidson*, 641 F.Supp. at 507 (citations omitted).

In the present case, an investigation was commenced by Manufacturers Mutual immediately upon its learning of the Cupstids' loss. Initially, C.W. Satterfield, Branch Claims Manager of Manufacturers Mutual, referred the claim to Joe Kitchens, a claims adjuster, for investigation and ad-

justment. Kitchens met with the Cupstids at the scene of the fire loss on the morning of March 10, the Monday following the fire, and began an investigation which lasted several days. Kitchens contacted an independent investigation agency, Aid Consulting Engineers, Inc. [Aid], for the purpose of performing an investigation into the cause and origin of the fire. This independent investigation was conducted by John T. Lynch and W.H. Lute, who, at the conclusion of their investigation, determined that the fire was of an incendiary origin, that it was intentionally caused with a petroleum product and that there were at least three points of origin of the fire: the living room, the upstairs den and the dining room.[1] In addition to Aid's investigation, the Jackson Fire Department conducted its own investigation as to the cause or origin of the fire which, according to the deposition testimony of Joseph Graham, an individual with the fire department who was personally involved in the investigation, concluded that the fire was the result of arson and that the Cupstids were the primary suspects.

According to Manufacturers Mutual, it was also learned that the Cupstids had a possible financial motive for burning the dwelling, based on information that three separate accounts obtained by the Cupstids with Unifirst Federal had been forceably closed due to overdrafts by the Cupstids, and that a builders risk policy which the Cupstids had carried on the dwelling had been previously cancelled for non-payment of premiums as the result of their check's having been returned unpaid.

With regard to "opportunity" to burn the dwelling, Joe Kitchens admitted in his deposition testimony that Manufacturers Mutual had no "conclusive proof" that either Kenneth or Nancy Cupstid physically set the fire themselves. In fact, there was some evidence that the Cupstids were in Louisiana at the time of the fire.[2] At the same time, however, Kitchens explained that he had received information from an individual who identified herself to him as Evelyn Duncan, which indicated that the Cupstids were directly involved in the fire and had arranged for the fire to be set. According to Kitchens, Duncan related to him in several telephone calls that she had been at the home of June Richardson, Mrs. Cupstid's mother, on or about the date of the fire and had overheard a conversation in which Mr. and Mrs. Cupstid said that they had to burn their residence since they could no longer make the payments. Duncan also implicated Larry Cupstid, Kenneth Cupstid's brother, and another individual, Verna Riser, as having been involved in the setting of the fire, and Duncan indicated to Kitchens that those two individuals would have been at the scene of the fire. Joseph Graham, in his deposition, explained that although the Cupstids were in Louisiana at the time of the fire, that was not unusual since, in some arson cases, the owner/occupants are absent when the fire is set, and instead, have someone set it for them.

In addition to the events surrounding the actual fire, Manufacturers Mutual asserts that it based its decision to deny benefits in part on certain alleged misrepresentations by the Cupstids in both the application for insurance and their proof of loss statement. With reference to the application misrepresentations, Manufacturers Mutual discovered that construction of the Cupstids' residence was not complete at the time it issued the policy, despite an alleged representation by the Cupstids to the effect that it was complete. Further, the Cupstids failed to disclose on the application that a previous builders risk policy obtained by them had been cancelled for non-payment of premiums. As to the proof of loss statement, the investigation into the fire revealed that certain of the contents items claimed by the Cupstids to have been lost in the fire were not located in the home. That is, the investigators were unable to find any evidence of the location of or existence of certain items of clothing which

1. The first report by Aid was dated April 2, 1986 and provided to Manufacturers Mutual before its denial of the Cupstids' claim. A second report by Aid was dated December 9, 1986.

2. While the whereabouts of the Cupstids at the time of the fire is in dispute, for purposes of this motion, the issue of whether the Cupstids were in Louisiana or in Jackson is immaterial.

the Cupstids listed on the proof of loss. These misrepresentations, according to Manufacturers Mutual, void the policy and hence its obligations thereunder.

In response to plaintiff's motion, the defendants have not set forth any facts which demonstrate that triable issues exist on the issue of punitive damages. They have presented no evidence, by affidavit or otherwise, which would tend to establish the absence of a legitimate or arguable reason for denial of their claim or that the conduct of Manufacturers Mutual was so egregious as to justify the imposition of punitive damages or the consideration by the jury of that issue. They simply assert that there exists a material issue of fact as to whether the fire was deliberately set by the Cupstids or unknown parties or whether it was in fact a result of spontaneous combustion of a flammable stored in their residence. They have presented no evidence to support the latter hypothesis and do not dispute the findings of the various investigations conducted of the fire. They do deny having been responsible for the setting of the fire, and in this vein urge that summary judgment is inappropriate inasmuch as Manufacturers Mutual has failed to demonstrate conclusively that they intentionally burned the dwelling. Further, they state that it is a matter of proof as to whether the misrepresentations purported to have been made by them were material and deliberate. They do not deny having made the misstatements, but claim that they were unintentional and inadvertent. All of these issues, they contend, are matters which are in good faith in controversy between the parties and can only be decided by a trial of this case on the merits.

There may well be a dispute between the parties as to whether the fire which caused the loss of the Cupstid residence was intentionally set and, if so, by whom, and further as to issues regarding the materiality or deliberate nature of certain misrepresentations alleged to have

been made by the Cupstids. These issues however, while relevant on the issue of the availability of policy proceeds, do not preclude the granting of summary judgment on the issue of punitive damages. In *Davidson, supra,* the court distinguished between a claim for wrongful denial of benefits and an insurer's bad faith refusal to pay benefits. A denial is wrongful when it is ultimately determined that the insured is entitled to proceeds under the terms of the policy and the facts of the loss. *Davidson,* 641 F.Supp. at 506. But if the insurer had a legitimate or arguable reason to deny the claim, the suit would still be one for wrongful denial but the insured would be limited to recovering damages available under the policy terms. *Id.* Conversely, if the insurer had *no* arguable reason for denying the claim, then the denial amounts to a bad faith refusal and a separate cause of action for punitive damages may exist. Under the facts presented in the case *sub judice,* Manufacturers Mutual's denial of benefits to the Cupstids may be proven at the trial of this cause to have been wrongful, *i.e.,* it may ultimately be required to pay the policy proceeds. Nevertheless, the question here is not whether the denial of the Cupstids' claim was wrongful, "but whether its conduct amounted to gross negligence so as to be in reckless disregard for the rights of the plaintiffs or whether it acted with malice toward the same." *Id.* at 510. In this regard, Manufacturers Mutual's denial of benefits on the basis of arson was a denial based on an arguable reason. There was abundant evidence to support its conclusion that the Cupstids, or someone acting on their behalf, were responsible for the fire which caused the loss, including *inter alia,* reports of three investigations which concluded that the fire had been intentionally set and which pointed to the Cupstids as the prime suspects, information from the individual identified as Duncan that the Cupstids were directly involved in the setting of the fire,[3] and other

---

3. The statement by Joseph Kitchens that Duncan told him that the Cupstids had said they were responsible for the fire is hearsay and not admissible on the issue of whether the Cupstids were responsible for the fire. However, "this is

not to say that [Manufacturers Mutual] could not consider it in deciding whether to pay the claim." *State Farm Fire and Casualty Company v. Simpson,* 477 So.2d 242, 251 (Miss.1985).

evidence tending to show various misrepresentations made by the Cupstids in connection with the application for insurance and the proof of loss. And, while Manufacturer Mutual's. belief that the fire was the result of arson, and that the Cupstids were responsible for that fire, "may be factually incorrect, it is not an unreasonable one, and the court is of the opinion that it does not rise up to the level of conduct required by law to support a bad faith refusal claim." *Davidson,* 641 F.Supp. at 510.

Moreover, the Cupstids' assertion that issues as to the origin of the fire and the materiality and/or deliberateness of misrepresentation are matters which are in good faith in dispute between the parties supports this court's conclusion. The Mississippi Supreme Court has held that when an insured is not entitled to a directed verdict on the underlying claim against the insurer, the issue of bad faith punitive damages should ordinarily not be submitted to the jury. *See Southern United Life Ins. Co. v. Caves,* 481 So.2d 764 (Miss. 1985). Here, the Cupstids freely admit the existence of a dispute, a "good faith" dispute as to the underlying contract claim. Consequently, they cannot plausibly contend for the existence of a viable bad faith claim. *See also Horton v. Hartford Life Insurance Co.,* 570 F.Supp. 1120 (N.D. Miss.1983) (dispute as to whether claimant disabled arising from conflicting doctor's reports sufficient to bar punitive damages award); *O'Connor v. Equitable Life Assurance Society of U.S.,* 592 F.Supp. 595 (N.D.Miss.1984) (arguable reason may exist where doctor's statement raises factual issue of disability).

At trial, "the plaintiffs will be given the opportunity ... to establish whether the denial of their claim was wrongful and whether they are entitled to contractual damages. But where, as here, there is no issue of material fact as to their entitlement to ... punitive damages, summary judgment is appropriate" and is granted in favor of Manufacturers Mutual.